**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1065

KORI CIOCA; MARY GALLAGHER, Massachusetts; REBEKAH HAVRILLA, South Carolina; MYLA HAIDER, Washington; SARAH ALBERTSON, Montana; GREG JELOVDOU, New York; AMBER DE ROCHE, Washington; PANAYIOTA BERTZIKIS, Massachusetts; KATELYN BOATMAN, Oklahoma; ANDREW SCHMIDT, California; NICOLE CURDT, Wyoming; JESSICA KENYON, Pennsylvania; ANDREA NEUTZLING, Ohio; KRISTEN REUSS, Ohio; JESSICA NICOLE HINVES; Virginia, STEPHANIE SCHROEDER, Illinois; AMBER YEAGER, California; AMY LOCKHART, Virginia; BLAKE STEPHENS, California; CLAUDIO CASTILLO, Texas, TOBEY THACHER, Arizona; INA CHILDRESS, Tennessee; ELIZABETH LYMAN, Texas; SANDRA SAMPSON, New Jersey; HANNAH SEWELL, Kentucky; LATOYIA WILLIAMS, Texas; TINA WILSON, Oklahoma; VALORIE DESAUTEL, Rhode Island,

Plaintiffs – Appellants,

and

COURTNEY HURD,

Plaintiff,

v.

DONALD RUMSFELD, Former Secretary of Defense; ROBERT GATES, Former Secretary of Defense,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:11-cv-00151-LO-TCB)

Argued:  May 17, 2013                    Decided:  July 23, 2013

---

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

---

Affirmed by published opinion.  Judge Agee wrote the opinion in which Judge Niemeyer and Judge Thacker joined.

---

**ARGUED:**   Susan L. Burke, BURKE PLLC, Washington, D.C., for Appellants.   Lowell Vernon Sturgill, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.   **ON BRIEF:**  Susan M. Sajadi, BURKE PLLC, Washington, D.C., for Appellants.   Neal H. MacBride, United States Attorney, Alexandria, Virginia, Stuart F. Delery, Acting Assistant Attorney General, Barbara L. Herwig, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

AGEE, Circuit Judge:

Twenty-eight current and former members of the United States armed forces ("Plaintiffs"), who allege they were victims of rape and sexual misconduct by fellow servicemembers during their military careers, brought suit against two former Secretaries of Defense, Donald Rumsfeld and Robert Gates ("Defendants") in the United States District Court for the Eastern District of Virginia.  Alleging that Defendants' acts and omissions in their official capacities contributed to a military culture of tolerance for the sexual crimes perpetrated against them, Plaintiffs sought money damages pursuant to Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Based on controlling Supreme Court precedent, the district court dismissed the Complaint, concluding that judicial abstention was required.  For the reasons explained below, we affirm the judgment of the district court.

I.

BACKGROUND AND PROCEEDINGS BELOW

Plaintiffs are twenty-five women and three men who are all veterans of or currently serving in the United States Army,

Navy, Marine Corps, or Coast Guard.[1]  In their Bivens Complaint ("the Complaint"), Plaintiffs describe acts of sexual assault committed against them by other armed forces personnel, and detail their often unsuccessful attempts to prosecute those responsible.[2]  Plaintiffs allege that their reports of serious crimes were met with skepticism, hostility, and retaliation by military authorities.  The accused assailants, according to the Complaint, often received only minimal punishment for the crimes alleged.  In essence, the Complaint describes a culture of sexual predation in the military fostered by the acts of Defendants, which Plaintiffs allege to be the cause of the rape and sexual assault committed against them.

Plaintiffs further allege in the Complaint that the Defendants violated their constitutional rights by, inter alia, "fail[ing] to (1) investigate rapes and sexual assaults, (2) prosecute perpetrators, (3) provide an adequate judicial system as required by the Uniform Military Justice Act, and (4) abide

---

[1] Because this appeal arises out of the grant of a motion to dismiss, we "accept[] all well-pled facts as true and construe[] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

[2] Plaintiffs solely plead a direct constitutional cause of action under Bivens as the only basis of their Complaint and bring no other claim, statutory or otherwise.

4

by Congressional deadlines to implement Congressionally-ordered institutional reforms to stop rapes and other sexual assaults." (J.A. 4.)

The Complaint also alleges, inter alia, that Secretary Rumsfeld "expressed scorn and derision towards Congressional efforts to eradicate sexual assault in the military," "permitted military Command to interfere with the impartiality of criminal investigations," ignored Congressional commands to take certain actions, and "did not make any efforts to eliminate retaliation against servicemembers who reported being raped, assaulted and harassed." (J.A. 53-54.)

As to Secretary Gates, the Plaintiffs pled that he "failed to take reasonable steps to prevent Plaintiffs from being repeatedly raped, sexually assaulted and sexually harassed," "permitted military Command to use nonjudicial punishment for" such conduct, "permitted military Command to retaliate against those servicemembers who reported being raped, assaulted, and harassed," and "interfered with and opposed Congressional directives designed to eliminate rape and sexual assault in the military." (J.A. 55.)

As a consequence of the foregoing allegations, Plaintiffs assert that the Defendants violated their Fifth Amendment rights to due process and equal protection, their First Amendment

5

rights to free speech, and their Seventh Amendment rights to trial by jury.

Defendants moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Before the district court, they argued that the Supreme Court has declined to extend <u>Bivens</u> to permit suits for money damages against government officials in general, but particularly not to permit suits for alleged torts that arise out of military service.[3]

After hearing argument, the district court issued an order granting Defendants' Rule 12(b)(6) motion and dismissing the Complaint. Relying heavily on <u>Chappell v. Wallace</u>, 462 U.S. 296 (1983), and <u>United States v. Stanley</u>, 483 U.S. 669 (1987), the district court observed that a <u>Bivens</u>-type remedy is "not available when 'special factors counseling hesitation' are present." (J.A. 62.) Noting that "the unique disciplinary structure of the military establishment is a special factor that counsels against judicial intrusion," J.A. 62, the court concluded that "[i]n the present case, the Plaintiffs sue the

---

[3] Defendants argued, in the alternative, that they are entitled to qualified immunity. The district court did not address this defense once it concluded that <u>Bivens</u> relief was unavailable to Plaintiffs. Because we affirm the district court's judgment on that ground, we similarly do not address any issue of qualified immunity.

6

Defendants for their alleged failures with regard to oversight and policy setting within the military disciplinary structure. This is precisely the forum in which the Supreme Court has counseled against the exercise of judicial authority." (J.A. 62.) Although the court observed that the allegations raised in the complaint were "egregious," it reiterated that the Supreme Court has "strongly advised against judicial involvement." (J.A. 62.)

Plaintiffs noted a timely appeal of the district court's judgment, and we have jurisdiction pursuant to 28 U.S.C. § 1291.[4]

---

[4] Two Plaintiffs, Kori Cioca and Panayiota Bertzikis, allege injuries arising out of their service while members of the United States Coast Guard. In the absence of specific circumstances not present here, the Coast Guard operates as a service within the Department of Homeland Security, not the Department of Defense. See 14 U.S.C. § (3). We therefore directed the parties to provide supplemental briefing on the issue of whether those Plaintiffs who served in the Coast Guard have standing to bring suit against Defendants, two former Secretaries of Defense. Although we have serious doubts that Cioca and Bertzikis possess such standing in this action, we do not decide that issue because we conclude that judicial abstention is appropriate in this case. See, e.g., Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005) (observing that prudential bars, such as abstention, "represent[] the sort of threshold question we have recognized may be resolved before addressing jurisdiction") (internal quotation marks omitted).

## II.

## STANDARD OF REVIEW

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." Epps v. JP Morgan Chase Bank, N.A., 675 F.3d 315, 320 (4th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.

## THE CONSTITUTIONAL BASIS OF A BIVENS ACTION

Plaintiffs raise one assignment of error on appeal: that the district court erred in concluding that a Bivens remedy does not lie for the constitutional violations they allege in their Complaint. In Bivens, the Supreme Court held that "violation of [the Fourth Amendment] by a federal agent acting under color of his authority gives rise to a cause of action for damages," despite the absence of any federal statute creating liability. 403 U.S. at 389. The Court explained that even without an explicit congressional authorization for a monetary remedy at law, "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the

8

laws, whenever he receives an injury." Id. at 397 (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163 (1803)).

Notwithstanding the breadth of that phrase, the Court placed an important qualifier on the availability of an implied right of action against a government official, foreshadowing the extremely narrow reach established in post-Bivens cases. The Court limited a Bivens right of action by stating that "the present case involves no special factors counselling hesitation in the absence of affirmative action by Congress." Id. at 396.[5] As the Court would later explain, "[t]he special factors counselling hesitation in the creation of a new remedy . . . relate[] to the question of who should decide whether such a remedy should be provided," rather than "the merits of the particular remedy that was sought." Bush v. Lucas, 462 U.S. 367, 380 (1983).

We recently examined the basis and application of Bivens, particularly in a military setting, in Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012). Our explanation recognized the

---

[5] The Court in Stanley described the "special factors counselling hesitation" language in Bivens as mere dictum. 483 U.S. at 678 ("We suggested in dictum that inferring such an action directly from the Constitution might not be appropriate when there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"). Regardless, "[i]n [the subsequent Supreme Court decision] Chappell, . . . that dictum became holding." Id. at 678-79.

Supreme Court's strict limits on a <u>Bivens</u> proceeding exist in part because "the Supreme Court has long counselled restraint in implying new remedies at law." <u>Lebron</u>, 670 F.3d at 547. Such restraint counsels that we review a plaintiff's "invitation to imply a <u>Bivens</u> action . . . with skepticism." <u>Id.</u> at 548.

As we emphasized in <u>Lebron</u>, judicial abstention from sanctioning a <u>Bivens</u> claim in the military context is, at its essence, a function of the separation of powers under the Constitution which "delegates authority over military affairs to Congress and to the President as Commander in Chief. It contemplates no comparable role for the judiciary." <u>Id.</u>

> Preserving the constitutionally prescribed balance of powers is thus the first special factor counseling hesitation in the recognition of [the plaintiff's] <u>Bivens</u> claim. The "Constitution contemplated that the Legislative Branch [have] plenary control over rights, duties, and responsibilities in the framework of the military establishment, including regulations, procedures, and remedies." <u>Chappell v. Wallace</u>, 462 U.S. 296, 301 (1983). Indeed, that control is explicit and not merely derivative of other powers: Congress has the enumerated powers to declare war, <u>see</u> U.S. Const., art. I, § 8, cl. 11; establish the armed forces, <u>see</u> <u>id.</u> cl. 12-13; and "make Rules for the Government and Regulation of the land and naval Forces," <u>id.</u> cl. 14. As the Supreme Court has noted, "What is distinctive here is the specificity of that technically superfluous grant of power . . . Had the power to make rules for the military not been spelled out, it would in any event have been provided by the Necessary and Proper Clause—as is, for example, the power to make rules for the government and regulation of the Postal Service." <u>United States v. Stanley</u>, 483 U.S. 669, 682 (1987) (internal citation omitted). As a consequence, "in no other area has the Court

10

> accorded Congress greater deference." <u>Rostker v. Goldberg</u>, 453 U.S. 57, 64–65 (1981).

<u>Id.</u> at 548-49.

As a consequence of the Constitution's specific delineation of the powers allotted among the branches of government in military affairs,

> whenever the Supreme Court has considered a <u>Bivens</u> case involving the military, it has concluded that "the insistence . . . with which the Constitution confers authority over the Army, Navy, and militia upon the political branches . . . counsels hesitation in our creation of damages remedies in this field." <u>Stanley</u>, 483 U.S. at 682. Put simply, "such a remedy would be plainly inconsistent with Congress' authority" in military affairs. <u>Chappell</u>, 462 U.S. at 304.

<u>Id.</u> at 550.

Against that backdrop, the Supreme Court has only twice, in the more than forty years since deciding <u>Bivens</u>, recognized a new implied monetary remedy against federal officials, and it has never done so in the military context. In <u>Davis v. Passman</u>, 442 U.S. 228 (1979), the Court allowed a congressional staffer to sue a congressman for alleged violations of the Due Process Clause of the Fifth Amendment. And in <u>Carlson v. Green</u>, 446 U.S. 14 (1980), the Court permitted a suit to go forward against federal prison officials for an alleged violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment.

It is clear that expansion of a <u>Bivens</u>-based cause of action, such as <u>Davis</u> and <u>Carlson</u>, is the exception, not the

11

rule. The Supreme Court has further acknowledged that since those cases were decided it has "responded cautiously to suggestions that Bivens remedies be extended into new contexts." Schweiker v. Chilicky, 487 U.S. 412, 421 (1988); see also Wilkie v. Robbins, 551 U.S. 537, 550 (2007) (A Bivens suit "is not an automatic entitlement."). Indeed, since Davis and Carlson, the Court has consistently turned away plaintiffs seeking to avail themselves of novel applications of Bivens. See e.g., Minneci v. Pollard, 565 U.S. ---, ---, 132 S. Ct. 617, 626 (2012) (no Bivens claim against employees of privately run federal prison); Wilkie, 551 U.S. at 550 (no Bivens action lies against Bureau of Land Management employees accused of retaliating against a landowner); Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001) (no Bivens remedy against corporate operator of private prison); FDIC v. Meyer, 510 U.S. 471, 486 (1994) (no Bivens cause of action against federal agencies); Schweiker, 487 U.S. at 420 (Bivens suit not permitted for due process violations alleged against government employees in their handling of Social Security applications); Stanley, 483 U.S. at 683 (no Bivens suits when injuries are sustained incident to military service); Bush, 462 U.S. at 390 (no Bivens remedy for a federal employee against a supervisor who has allegedly violated employee's First Amendment rights); Chappell, 462 U.S. at 305 (military personnel may not sue superior officers in a Bivens

12

action).  In light of this unbroken line of judicial abstention, we have emphasized that "[t]he Bivens cause of action is not amenable to casual extension."  Lebron, 670 F.3d at 548 (quoting Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006)).

Moreover, the Supreme Court has recognized that implied causes of action for money damages are uniquely problematic in the context of claims against the military.  In Chappell, the Court concluded that no Bivens cause of action could lie against certain Naval officers alleged to have engaged in racial discrimination against the plaintiffs, a group of enlisted sailors.  Chief Justice Burger, writing for the Court, explained:

> [t]he special status of the military has required, the
> Constitution has contemplated, Congress has created,
> and this Court has long recognized two systems of
> justice, to some extent parallel: one for civilians
> and one for military personnel.  The special nature of
> military life—the need for unhesitating and decisive
> action by military officers and equally disciplined
> responses by enlisted personnel—would be undermined by
> a judicially created remedy exposing officers to
> personal liability at the hands of those they are
> charged to command.

Id. at 303-04 (internal citation omitted); see also id. at 301 ("Judges are not given the task of running the Army.") (quoting Orloff v. Willoughby, 345 U.S. 83 (1953)).  It is for that reason, Chief Justice Burger noted, "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit to tamper with the established relationship between enlisted

13

military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment." Id. at 300. Accordingly, the Court determined that "the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a Bivens-type remedy against their superior officers." Id. at 304.

In concluding that a Bivens claim was unavailable to the plaintiffs in Chappell, the Court drew guidance from Feres v. United States, 340 U.S. 135 (1950).[6] In Feres, the Court analyzed "whether the [Federal] Tort Claims Act ["FTCA"] extends its remedy to one sustaining 'incident to [military] service' what under other circumstances would be an actionable wrong." 340 U.S. at 138. Answering that question in the negative, the Feres Court concluded that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146. Drawing on that precedent, the Court in Chappell then observed, "[h]ere, as in Feres, we must be concerned with

---

[6] Over a dissenting opinion from Justice Thomas, the Supreme Court recently declined to revisit its holding in Feres. See Lanus v. United States, No. 12-862, --- S. Ct. --- (June 27, 2013) (order denying cert.).

14

the disruption of the peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court."  462 U.S. at 304 (internal quotation marks and alterations omitted).

Four years after Chappell, the Supreme Court reaffirmed and clarified the Chappell holding in Stanley, wherein a former servicemember brought actions pursuant to the FTCA and Bivens alleging that he was the involuntary victim of Army LSD experiments during his military service.  483 U.S. at 671-72. The Stanley plaintiff argued that because he was not suing persons directly in his chain of command, the concerns articulated in Chappell were inapplicable.  Id. at 679.  In holding that the plaintiff could not pursue a Bivens action, the Court explicitly adopted the "incident to service" test articulated in Feres and Chappell for application in a Bivens proceeding.

> Today, no more than when we wrote Chappell, do we see any reason why our judgment in the Bivens context should be any less protective of military concerns than it has been with respect to FTCA suits, where we adopted an "incident to service" rule.  In fact, if anything we might have felt freer to compromise military concerns in the latter context, since we were confronted with an explicit congressional authorization for judicial involvement that was, on its face, unqualified; whereas here we are confronted with an explicit constitutional authorization for Congress "[t]o make Rules for the Government and Regulation of the land and naval Forces," U.S. Const. Art. I, § 8, cl. 14, and rely upon inference for our own authority to allow money damages. This is not to

15

say, . . . that all matters within congressional power are exempt from Bivens.  What is distinctive here is the specificity of that technically superfluous grant of power, and the insistence (evident from the number of Clauses devoted to the subject) with which the Constitution confers authority over the Army, Navy, and militia upon the political branches.  All this counsels hesitation in our creation of damages remedies in this field.

Id. at 681-82 (footnotes omitted).  The Court also emphasized the importance of the "incident to service" test insofar as it minimized the "degree of disruption" that a judicial inquiry would create:

A test for liability that depends on the extent to which particular suits would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters.  Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands.  Even putting aside the risk of erroneous judicial conclusions (which would becloud military decisionmaking), the mere process of arriving at correct conclusions would disrupt the military regime.  The "incident to service" test, by contrast, provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters.

Id. at 682-83 (emphasis added).  The Court "reaffirm[ed] the reasoning of Chappell that the 'special factors counselling hesitation'-'the unique disciplinary structure of the Military Establishment and Congress' activity in the field,'. . . require abstention in the inferring of Bivens actions as extensive as

16

the exception to the FTCA established by Feres[.]"  Id. at 683-84.

Distilling these cases to their core holdings, we restate the principles guiding our analysis in the case at bar: no Bivens action will lie where special factors counsel hesitation in creating an implied right of action and special factors clearly counsel hesitation in implying a cause of action for injuries arising out of military service.  The Supreme Court holding in Stanley left no doubt as to this principle: "We hold that no Bivens remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'"  483 U.S. at 684.  As one treatise has succinctly explained: "The law is now settled that Bivens suits are never permitted for constitutional violations arising from military service, no matter how severe the injury or how egregious the rights infringement."  Erwin Chemerinsky, Federal Jurisdiction 621-22 (5th ed. 2007).

As we now explain, the injuries alleged by Plaintiffs in their Complaint, clearly "arise out of or are in the course of activity incident to service."  Cf. Stanley, 483 U.S. at 684.

17

IV.

INCIDENT TO SERVICE

The "incident to service" test, as articulated in Feres, "cannot be reduced to a few bright line rules." United States v. Shearer, 473 U.S. 52, 57 (1985). Nonetheless, the Court's concerns in Feres are implicated where a suit "requires the civilian court to second-guess military decisions," or raises an allegation that "goes directly to the management of the military[,] [calling] into question basic choices about the discipline, supervision, and control of a serviceman." Id. at 57-58. Shearer is particularly instructive for the case at bar.

Private Vernon Shearer was off duty and away from his duty station at Fort Bliss, New Mexico, when he was kidnapped and murdered by Private Andrew Heard, a fellow serviceman. Id. at 53. Private Heard had previously been convicted of manslaughter by a court in Germany, and then assigned by the Army to Fort Bliss upon his release from German prison. Id. at 54. Private Shearer's mother, the administratrix of his estate, brought a FTCA action against the Army, claiming that the Army "negligently and carelessly failed to exert a reasonably sufficient control" over Private Heard, resulting in her son's wrongful death. Id.

The Supreme Court ultimately held that Feres barred the suit. In addition to implicating military management and

18

calling into question the decisions of military commanders about the discipline, supervision, and control of servicemembers, the Court opined that

> [t]o permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct. But as we noted in Chappell v. Wallace, such "complex, subtle, and professional decisions as to the composition, training, . . . and control of a military force are essentially professional military judgments."

Id. at 58 (quoting Chappell, 462 U.S. at 302).

Applying the "incident to service" test in the case at bar, it is clear that the allegations raised by Plaintiffs' Complaint are either incident to, or arise out of, their service in the military.

The Complaint alleged that Secretary Rumsfeld, inter alia,

- Failed to appoint any members to a commission to investigate policies and procedures with respect to the military investigation of reports of sexual misconduct, as required by Congress;

- "repeatedly permitted military Command to rely on the Article 15 (nonjudicial punishment) process for allegations involving rapes, sexual assaults, and sexual harassment," (J.A. 53);

19

- "repeatedly permitted military Command to interfere with the impartiality of criminal investigations," (J.A. 53);

- "repeatedly permitted the military Command to charge those alleged to have raped or sexually assaulted a co-worke[r] under [Uniform Code of Military Justice ("UCMJ")] Article 134 (adultery) rather than under Article 120 (rape)," (J.A. 53);

- "repeatedly ensured that the military, not the civilian authorities, investigated and prosecuted charges of rape and sexual assault," (J.A. 53);

- "repeatedly permitted eighty percent of those military personnel convicted of sex crimes to be honorably discharged from the military and receive their full retirement benefits," (J.A. 53);

- "permitted military Command to retaliate against those service members who reported being raped, assaulted and harassed," (J.A. 54);

- "granted 'waivers' that permitted individuals convicted of domestic violence-related offenses to join the services and carry weapons," (J.A. 54); and

- "permitted military personnel on duty to ridicule both male and female subordinates by using sexually-charged and offensive terms," (J.A. 54.)

20

The allegations against Secretary Rumsfeld, though obviously troubling if true, fall within the heartland of the concerns identified in Chappell, Stanley, and Feres. The Plaintiffs' allegations directly challenge the "wisdom of a wide range of military and disciplinary decisions," cf. Shearer, 473 U.S. at 58, and each directly challenge the decisions made within the ultimate chain of military command. Allowing the suit against Secretary Rumsfeld to go forward would "require[] the civilian court to second-guess military decisions," because the complaint raises allegations that "go[] directly to the management of the military[,] [calling] into question basic choices about the discipline, supervision, and control of service[members]." Shearer, 473 U.S. at 58.

But apart from the separation of powers infringement that such a course of judicial second guessing of military command decisions would encompass, the Stanley court was equally concerned with the occurrence of a judicial inquiry at all. Such an inquiry would "rais[e] the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. Even putting aside the risk of erroneous judicial conclusions (which would becloud military decisionmaking), the mere process of arriving at correct conclusions would disrupt the military regime."

21

*Stanley*, 483 U.S. at 682-83. Consequently, both rationales compel judicial abstention.

The same is true of the Plaintiffs' allegations lodged against Secretary Gates. In addition to raising similar allegations to those brought against Secretary Rumsfeld, the Plaintiffs contend that Secretary Gates permitted command to use nonjudicial punishment for sexual crimes and permitted retaliation against reporters of sexual crimes. Further, the Complaint alleges that Secretary Gates

- directed the director of the Sexual Assault Prevention and Response Office to ignore a congressional subpoena,

- "failed to ensure that the Department [of Defense] met its statutorily-mandated deadline of January 2010 for implementing the [sexual assault report] database prescribed by the National Defense Act for Fiscal Year 2009," (J.A. 56); and

- "selected an inexperienced and tiny firm . . . to receive the $250 million contract designed to implement the Army's obligations to prevent sexual assault and harassment." (J.A. 56.)

Once again, though the allegations raised are serious matters, the *Chappell*, *Stanley*, *Feres* and *Shearer* precedents mandate that courts not permit a *Bivens* action that challenges military decisionmaking. See *Stanley*, 183 U.S. at 684 ("We hold

22

that no Bivens remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'"); see also Chemerinksy, supra, at 17.

Plaintiffs argue, however, that the injuries they allege did not "arise out of" and were not "incident to" military service. Specifically, they assert that "Defendants have not made any evidentiary showing that rape and sexual assault, and the resultant failures to punish the perpetrators, served a military mission." (Appellants' Opening Br. 28; see also id. ("In order to fall within the scope of the 'incident to service' [test], the injury must actually arise from conduct done to further a military mission.")).

Plaintiffs fundamentally misapprehend the nature of the "incident to service" rule, which does not inquire whether the discrete injuries to the victim were committed "in support of the military mission." Rather, the "incident to service" test asks, in relevant part, whether "particular suits would call into question military discipline and decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military matters." Stanley, 483 U.S. at 682. Put another way, where a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military, the "incident to service" test is implicated.

The Complaint clearly alleges injuries that stem solely from Plaintiffs' military service.[7] Indeed, the Plaintiffs allege that the Defendants' command and management, or mismanagement, of the military is the ultimate cause of their injuries. For that reason, the Complaint states a claim for injuries that are "incident to military service" as the Supreme Court has applied that concept.

In the alternative, Plaintiffs argue that the facts of this case are more closely aligned with Brooks v. United States, 337 U.S. 49 (1949), in which the Supreme Court allowed a suit brought by servicemen to go forward against the government for injuries sustained in a motor vehicle accident involving an Army truck driven by a civilian. Id. at 918-21. But as the Court explained in Feres, Brooks is of no assistance to the Plaintiffs.

> The actual holding in the Brooks case can support liability . . . only by ignoring the vital distinction there stated. The injury to Brooks did not arise out of or in the course of military duty. Brooks was on furlough, driving along the highway, under compulsion of no orders or duty and on no military mission. A Government owned and operated vehicle collided with him. Brooks' father, riding in the same car, recovered for his injuries and the Government did not further contest the judgment but contended that there

---

[7] Without question, sexual assault does not support a proper military mission. However, Plaintiffs' claims in the Complaint are not against the perpetrators of such acts, but only to the command and management of the military.

24

> could be no liability to the sons, solely because they were in the Army. This Court rejected the contention, primarily because Brooks' relationship while on leave was not analogous to that of a soldier injured while performing duties under orders.

Feres, 340 U.S. at 146.

Resolution of the cause of action in Brooks was simply a garden variety automobile personal injury claim which did not "require judicial inquiry into, and hence intrusion upon, military matters." Stanley, 483 U.S. at 683. The plaintiffs' military service in Brooks had no nexus to the claim for injury. Put simply, none of the concerns articulated in Stanley, Chappell, and Feres, were implicated in the resolution of the personal injury claim alleged in Brooks.

Here, by contrast, for the reasons already explained, all the injuries alleged relate directly to the fact that Plaintiffs served in the military and challenge "military discipline and decisionmaking" as the cause of their injury. Cf. id. at 682. Brooks' injuries "had nothing to do with Brooks' army careers, [and the] injuries [were] not caused by their service except in the sense that all human events depend on what has already transpired." 337 U.S. at 52 (emphasis added). No question of "military discipline and decisionmaking" could have been involved in Brooks; the case is therefore inapposite.

Plaintiffs additionally argue that "permitting the federal courts to adjudicate instances when Executive Branch officials

25

violate Congressional mandates on military discipline furthers the goal of military discipline." Br. of Appellants at 10. However, we rejected a similar argument in Lebron, in which certain retired military officers argued that judicial involvement in adjudicating claims arising from the detention of enemy combatants "will cause no interference with the legitimate mission of our military forces." Lebron, 670 F.3d at 550 n.3. Following the clear Supreme Court precedent, we reasoned that argument missed the mark because

> [w]e do not address the merits of whether a damages remedy would interfere with the military or not. Rather, we defer to Congress as the branch constitutionally charged with addressing that question, and we will not readily displace the legislative role by concluding on our own authority that damages are appropriate.

Id.

Here, we similarly do not pass on the question of whether permitting a Bivens action would help or hinder military decision-making or discipline: an issue beyond our judicial cognizance. Instead, we observe from the Complaint that resolution of Plaintiffs' claims would force us to pass judgment on the merits of the Defendants' military decisions, which Supreme Court precedent has concluded is not within the realm of our judicial branch function. Congress, not the courts, is in the proper constitutional position to conduct such an inquiry

26

and provide a statutory remedy should it determine that action is warranted.

Plaintiffs also argue that they should be accorded a Bivens right based on certain language from Chappell stating that the Supreme Court "has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." 462 U.S. at 304. But as the Supreme Court explained in Stanley, Plaintiffs take this isolated phrase out of context and ignore the Court's actual holding.

> Similarly irrelevant is the statement in Chappell, erroneously relied upon by Stanley and the lower courts, that we have "never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." 462 U.S. at 304. As the citations immediately following that statement suggest, it referred to redress designed to halt or prevent the constitutional violation rather than the award of money damages. See Brown v. Glines, 444 U.S. 348 (1980); Parker v. Levy, 417 U.S. 733 (1974); Frontiero v. Richardson, 411 U.S. 677 (1973). Such suits, like the case of Wilkes v. Dinsman, 7 How. 89 (1849), distinguished in Chappell, 462 U.S., at 305, n. 2, sought traditional forms of relief, and "did not ask the Court to imply a new kind of cause of action." Ibid.

Stanley, 483 U.S. at 683.

All the cited cases brought causes of action abjuring money damages and seeking some other form of relief. It was solely in the context of referencing non-money-damages cases that Chappell made the statement Plaintiffs' cite. In fact, no case has

27

permitted a <u>Bivens</u> action for money damages in the military setting. And, as Plaintiffs' Complaint seeks <u>only</u> money damages, it cannot proceed. (<u>See</u> J.A. 4. ("This action seeks money damages under <u>Bivens</u> . . . .").)[8]

---

[8] Indeed, the only case we can identify where the Supreme Court did not dismiss a suit brought by a servicemember against a commanding officer is the pre-Civil War case of <u>Wilkes v. Dinsman</u>, 48 U.S. (7 How.) 89 (1849), which is of no aid to the Plaintiffs. <u>Wilkes</u> arose as an action for common law trespass for assault and battery and false imprisonment, brought by Dinsman, a U.S. marine, against his commanding officer. Dinsman alleged that after his term of enlistment had expired, he was wrongly detained by his commander and forced to continue his military service involuntarily. The Supreme Court reversed a verdict for Dinsman and remanded for a new trial, but without an analysis of the court's jurisdiction to consider such a complaint. <u>Id.</u> In determining that Wilkes, the commanding officer, was entitled to a new trial as a matter of law, its language seemed to foreshadow the later holdings in <u>Feres</u>, <u>Chappell</u>, and <u>Stanley</u>.

> The <u>Wilkes</u> Court affirmed the proposition that
>
> a public officer, invested with certain discretionary powers, never has been and never should be, made answerable for an injury, when acting within the scope of his authority, and not influence by malice, corruption, or cruelty. . . .
>
> No review of his decisions, if within his jurisdiction, is conferred by law on either courts, or juries[.]

48 U.S. (7 How.) at 129. Further, as the <u>Chappell</u> court recognized, <u>Wilkes</u> "involved a well-recognized common law cause of action . . . and did not ask the Court to imply a new kind of cause of action." 462 U.S. at 305 n.2. Moreover, any precedential value of <u>Wilkes</u> is dubious, because, "since the time of <u>Wilkes</u>, significant changes have been made establishing a comprehensive system of military justice." <u>Id.</u>

28

We must also reject Plaintiffs' argument that their suit should go forward because "[s]ervicemembers must be permitted to seek redress in the federal courts when their Constitutional rights are violated." Appellants' Opening Br. 14. In essence, Plaintiffs seem to argue that a Bivens remedy is their only avenue for such redress. The Supreme Court has clearly rejected that argument as well.

> [I]t is irrelevant to a "special factors" analysis whether the laws currently on the books afford Stanley, or any other particular serviceman, an "adequate" federal remedy for his injuries. The "special factor" that "counsels hesitation" is not the fact that Congress has chosen to afford some manner of relief in the particular case, but the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate.

Stanley, 483 U.S. at 683 (alterations omitted).

V.

CONCLUSION

In the more than twenty-five years since the Supreme Court pronounced in Stanley that servicemembers will not have an implied cause of action against the government for injuries arising out of or incident to their military service under Bivens, Congress has never created an express cause of action as a remedy for the type of claim that Plaintiffs allege here. And

29

it is Congress, not the courts, that the Constitution has charged with that responsibility.[9]

In concluding that Plaintiffs lack a <u>Bivens</u> cause of action in this case, we do not downplay the severity of Plaintiffs' allegations or otherwise imply that the conduct alleged in Plaintiffs' Complaint is permissible or acceptable. Rather, our decision reflects the judicial deference to Congress and the Executive Branch in matters of military oversight required by the Constitution and our fidelity to the Supreme Court's consistent refusal to create new implied causes of action in this context. Those principles, as clearly expressed in <u>Chappell</u>, <u>Stanley</u>, and <u>Feres</u>, counsel that judicial abstention is the proper course in this case.

For all the foregoing reasons, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

---

[9] Although we are the first Court of Appeals to encounter precisely this issue, we observe that our holding is consistent with the holding of the District Court for the District of Columbia, deciding a nearly identical case earlier this year. <u>See</u> <u>Klay v. Panetta</u>, --- F. Supp. 2d ---, Case No. 12-0350 (ABJ) 2013 WL 458318 (D.D.C. Feb. 7, 2013).