**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2419**

FREDERICK AIKENS,

Plaintiff - Appellant,

v.

WILLIAM E. INGRAM, JR., individually and in his capacity as
Adjutant General of the North Carolina Army National Guard;
PETER VON JESS, individually and in his capacity as
Lieutenant Colonel of the North Carolina National Guard,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh. Terrence W. Boyle,
District Judge. (5:11-cv-00371-BO)

Argued: December 9, 2015          Decided: January 29, 2016

Amended: February 1, 2016

Before KING, SHEDD, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Thacker wrote the opinion,
in which Judge King joined. Judge Shedd wrote a separate
concurring opinion.

**ARGUED:** William Woodward Webb, Sr., EDMISTEN & WEBB, Raleigh,
North Carolina, for Appellant. Gerald Kevin Robbins, NORTH
CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for
Appellees. **ON BRIEF:** William Woodward Webb, Jr., EDMISTEN &
WEBB, Raleigh, North Carolina, for Appellant. Roy Cooper, North

Carolina Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

THACKER, Circuit Judge:

Colonel Frederick Aikens ("Appellant") challenges the district court's grant of summary judgment on his 42 U.S.C. § 1983 claim in favor of two former members of the North Carolina Army National Guard, Adjutant General William E. Ingram ("Ingram") and Lieutenant Colonel Peter von Jess ("von Jess") (collectively, "Appellees"). Appellant alleges that Appellees, motivated by revenge, directed other service members to monitor Appellant's email messages, which he sent while serving on active duty in Kuwait, and to forward incriminating messages to von Jess. Appellant claims this alleged conduct violated his Fourth Amendment rights.

The district court granted summary judgment based on the justiciability doctrine set forth in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971) (providing a four-factor test for reviewability of claims based on internal military affairs). For the reasons that follow -- and acknowledging that Appellant now renounces any claim for equitable relief -- we affirm the district court on the basis of the military abstention doctrine set forth in Feres v. United States, 340 U.S. 135 (1950).

I.

The district court's opinion sets forth the extensive procedural history of this case, so we do not relay it here. See Aikens v. Ingram, 71 F. Supp. 3d 562, 565-66 (E.D.N.C.

3

2014). We recount the following relevant factual background in the light most favorable to Appellant, the non-moving party. See Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 407 (4th Cir. 2015).

In 2001, Appellant, then a member of the North Carolina National Guard ("NCNG"), was promoted from executive officer to full colonel and commanding officer of the 139th Rear Operations Center ("ROC"). After Appellant's promotion, Adjutant General Ingram named his longtime friend, von Jess, as executive officer in Appellant's place. This assignment meant that Appellant was in a supervisory position over von Jess.

In December 2002, Appellant was instructed to complete an officer evaluation report ("OER") of von Jess. Appellant gave von Jess a negative OER, which explained that von Jess "ha[d] not demonstrated the ability to treat everyone with dignity and respect and should not be promoted." J.A. 246.[1] Von Jess appealed the OER to Ingram, stating that Appellant was "purposefully vindictive," "angry," "irrational," and possessed "professional jealousy." J.A. 247, 257.

In early 2003, Appellant was called to active duty and deployed to Camp Doha, Kuwait. Ingram and von Jess remained in

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

North Carolina, but the animosity between Appellant and von Jess did not subside. In November 2003, Appellant received notice that Specialist Paul Jones and Staff Sergeant Brian McCarthy, information technology personnel supporting the 139th ROC, had used illegal means to obtain his personal emails for the better part of 2003. Appellant learned that Jones and McCarthy forwarded around 130 of those emails to von Jess, who was not deployed at the time.[2] Von Jess referenced those emails in a memorandum to the North Carolina Governor's chief of staff. In that memorandum, von Jess accused Appellant of "unethical and unprofessional behavior that . . . shows criminal intent to overthrow the Adjutant General," and he claimed information in the emails "parallel[led] treason or mutiny." J.A. 259-60. Von Jess also forwarded the emails to the Department of the Army Inspector General ("DAIG").

In May 2004, the DAIG informed Appellant that he was being investigated for contributing to a hostile command climate and having inappropriate relations with women. The DAIG

---

[2] The emails are not included in the record, but according to Jones and McCarthy, they included "interesting traffic," i.e., emails to "women [who] were [not Appellant's] wife," and emails that indicated that Appellant "seemed to be plotting to overthrow [Ingram]." J.A. 264-65 (internal quotation marks omitted). Appellant classifies the emails as personal correspondence with his family, church members, and his wife, specifically, "traffic between my wife and I that only a husband and wife should see." Id. at 296.

5

concluded that Jones and McCarthy improperly browsed Appellant's email, but it nonetheless used the information in the emails to find six instances of active duty misconduct on Appellant's part. The DAIG provided its findings to the Governor of North Carolina and Ingram. Ingram then forwarded the findings to the Commander of the First United States Army, Lieutenant General Russel Honoré. In July 2005, Honoré withdrew federal recognition from Appellant, and he was constructively terminated from the NCNG. Appellant waived the withdrawal hearing and elected to transfer to the retired reserve.

On April 27, 2006, Appellant sued Appellees pursuant to 42 U.S.C. § 1983,[3] claiming that they facilitated unconstitutional searches and seizures of his personal emails while he was deployed in Kuwait. In support of his claim, Appellant emphasized his turbulent history with von Jess, and a special camaraderie between von Jess and Ingram. Specifically, Appellant maintains that von Jess and Ingram authorized and directed McCarthy and Jones to monitor Appellant's emails and send incriminating emails to von Jess.

Appellees moved for summary judgment, asserting Appellant's claims failed for several reasons. They argued

---

[3] Appellant also brought a North Carolina invasion of privacy claim, but he has since abandoned it.

Appellant had no reasonable expectation of privacy in his emails because Army Regulation 380-19, in effect at the time of Appellant's deployment to Camp Doha, made clear that emails sent and received over the Department of Defense ("DOD") computer system could be monitored. See U.S. Dep't of Army, Reg. 380-19, Information Systems Security § 4-1(l) (Feb. 27, 1998) (providing that the DOD computer system was to be used "only for authorized U.S. government use"; use of the system, "authorized or unauthorized," constituted "consent to monitoring"; and "all communications over the DOD system [could] be monitored"); see also J.A. 307. Appellees also maintained Appellant's claims were nonjusticiable under Feres v. United States, 340 U.S. 135 (1950).

The district court ultimately agreed that Appellant's claims were nonjusticiable, albeit under the framework set forth in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971) (providing a four-factor test for reviewability of claims based on internal military affairs), and granted Appellees' motion for summary judgment. Appellant timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review the district court's grant of summary judgment de novo, "drawing reasonable inferences in the light most favorable to the non-moving party." Butler v. Drive Auto.

7

<u>Indus. of Am., Inc.</u>, 793 F.3d 404, 407 (4th Cir. 2015) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

We consider de novo the threshold legal question of whether the district court properly abstained from ruling on Appellant's claims. <u>See</u> <u>Cioca v. Rumsfeld</u>, 720 F.3d 505, 508 n.4 (4th Cir. 2013) (describing the applicability of <u>Feres v. United States</u>, 340 U.S. 135 (1950), as a "threshold question"); <u>see also</u> <u>VonRosenberg v. Lawrence</u>, 781 F.3d 731, 734 (4th Cir. 2015) (applying de novo review to abstention questions).

We first recognize that, at this juncture, Appellant is seeking only "damages against [Appellees] in their individual capacities." Appellant's Br. 22. Although in his opening brief Appellant claims to seek "a declaration that Appellees' actions be declared unlawful under the Fourth Amendment," <u>id.</u>, he abandons any claim for equitable relief in his reply brief, <u>see</u> Appellant's Reply Br. 8 ("Col. Aikens's claims for damages . . . are the only claims he appeals."); <u>see also</u> Oral Argument at 8:50-9:15, <u>Aikens v. Ingram</u>, No. 14-2419 (Dec. 9, 2015),

8

available at http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments.[4]

## A.

The district court granted summary judgment on Appellant's claim for equitable relief by relying on the Fifth Circuit's decision in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), which provides a four-factor test for reviewability of claims based on internal military affairs. See also Williams v. Wilson, 762 F.2d 357, 359 (4th Cir. 1985) (adopting the Mindes test where a servicemember challenged the National Guard's empaneling of a selective retention board).

The parties agree that Mindes has traditionally applied to actions seeking equitable relief, not damages. See Appellees' Br. 40 (observing that this court has "adopted the use of the Mindes test in reviewing matters requesting equitable relief in military actions" (emphasis supplied)); Appellant's Reply Br. 8 ("Mindes applies only to equitable relief."). Thus, since Appellant has abandoned his claim for equitable relief, the logical conclusion is that Mindes has no place in our analysis.

---

[4] Appellant likewise fails to challenge the district court's decision that he cannot collect damages from Appellees in their official capacities pursuant to the Eleventh Amendment; therefore, this argument is waived. See Yousefi v. INS, 260 F.3d 318, 326 (4th Cir. 2001).

9

However, some courts, including our own, have sent mixed signals regarding whether Mindes applies to claims seeking damages. See, e.g., Wilt v. Gilmore, 62 F. App'x 484, 487 (4th Cir. 2003) (per curiam) (relying on Mindes, affirming dismissal of racial discrimination claims for $2.5 million in compensatory damages against Virginia National Guard officers because appellant did not exhaust administrative remedies); Holdiness v. Stroud, 808 F.2d 417, 422-23 (5th Cir. 1987) (applying Mindes test to § 1983 action seeking $1 million in damages).

Without passing on the continued viability of the Mindes test in this circuit,[5] we only observe that in this particular case, the test is an ill fit. Our published decisions applying the Mindes test dealt with internal personnel matters such as challenges to convening of retention boards and military discharge. See Williams, 762 F.2d at 359; Guerra v.

_____

[5] Since we adopted the Mindes test in Williams, we have applied it only once in a published opinion. See Guerra v. Scruggs, 942 F.2d 270, 276 (4th Cir. 1991) (applying Mindes test to declare unreviewable a servicemember's challenge to his military discharge). Other circuits have rejected the Mindes test outright. See, e.g., Knutson v. Wisconsin Air Nat'l Guard, 995 F.2d 765, 768 (7th Cir. 1993) ("We disagree with . . . the adoption of the four-factor analysis in Mindes. As the Third Circuit has pointed out, the Mindes approach erroneously 'intertwines the concept of justiciability with the standards to be applied to the merits of the case.'" (footnote omitted) (quoting Dillard v. Brown, 652 F.2d 316, 323 (3d Cir. 1981)); accord Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1512 (D.C. Cir. 1989).

10

Scruggs, 942 F.2d 270, 276 (4th Cir. 1991). The case at hand is markedly different. Appellant alleges unconstitutional, ultra vires actions by National Guard officers against Appellant while he was serving in a federal capacity. As such, the Mindes test has no place.

B.

Nonetheless, we must address whether Feres bars Appellant from seeking damages under 42 U.S.C. § 1983.

1.

Originally, Feres stood for the proposition that the Government is not liable under the Federal Tort Claims Act ("FTCA") "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146 (the "Feres 'incident to service' test" or the "Feres test"); see also United States v. Johnson, 481 U.S. 681, 690 (1987) (reaffirming the holding in Feres because "suits brought by service members against the Government for injuries incurred incident to service . . . are the type[s] of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." (alteration in original) (emphasis, citation, and internal quotation marks omitted)).

Subsequently, the Supreme Court extended the Feres "incident to service" test to causes of action outside the FTCA

11

realm, including claims against federal officials pursuant to _Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics_, 403 U.S. 388 (1971). _See, e.g._, _Chappell v. Wallace_, 462 U.S. 296, 300 (1983) (relying on _Feres_, holding that it would be inappropriate to provide enlisted military personnel a _Bivens_ remedy against their superior officers, explaining, "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers"); _United States v. Stanley_, 483 U.S. 669, 684 (1987) (where servicemember sued military officers for giving him LSD as part of an Army experiment, holding, "no _Bivens_ remedy is available for injuries that 'arise out of or are in the course of activity incident to service'" (quoting _Feres_, 340 U.S. at 146)).

Although _Stanley_ clarified that the _Feres_ "incident to service" test is applicable to constitutional claims under _Bivens_, the Supreme Court has not extended the reasoning of _Chappell_ and _Stanley_ and applied the test to constitutional claims brought against state officers under 42 U.S.C. § 1983. Nor have we. Almost all of our sister circuits, however, have done so. _See, e.g._, _Newton v. Lee_, 677 F.3d 1017, 1025 (10th Cir. 2012); _Matreale v. N.J. Dep't of Military & Veterans Affairs_, 487 F.3d 150, 154 (3d Cir. 2007); _Speigner v._

12

<u>Alexander</u>, 248 F.3d 1292, 1295 (11th Cir. 2001); <u>Jones v. N.Y. State Div. of Military & Naval Affairs</u>, 166 F.3d 45, 51 (2d Cir. 1999); <u>Bowen v. Oistead</u>, 125 F.3d 800, 803 & n.2 (9th Cir. 1997); <u>Wright v. Park</u>, 5 F.3d 586, 591 (1st Cir. 1993); <u>Knutson v. Wisc. Air Nat'l Guard</u>, 995 F.2d 765, 770 (7th Cir. 1993); <u>Watson v. Ark. Nat'l Guard</u>, 886 F.2d 1004, 1007 (8th Cir. 1989); <u>Crawford v. Tex. Army Nat'l Guard</u>, 794 F.2d 1034, 1036 (5th Cir. 1986); <u>see also</u> <u>Bois v. Marsh</u>, 801 F.2d 462, 470 (D.C. Cir. 1986) (applying <u>Feres</u> to an intramilitary damages action under 42 U.S.C. § 1985(3)).

2.

We join our sister circuits in extending the <u>Feres</u> "incident to service" test to § 1983 actions. This result is supported by Supreme Court jurisprudence and respects the delicate separation of powers necessary for smooth and effective military governance.

First, because suits under both § 1983 and <u>Bivens</u> address constitutional infringements by government officials, the Supreme Court's holding in <u>Stanley</u> is logically applicable to § 1983 claims against state officials. Indeed, the Court has declared, "[I]n the absence of congressional direction to the contrary, there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by <u>Bivens</u> than is

13

accorded state officials when sued for the identical violation under § 1983." Butz v. Economou, 438 U.S. 478, 500 (1978).

This precept is especially important in a case involving National Guard service members, as § 1983 actions would create the same "degree of disruption" to Guard affairs as Bivens actions would to "military discipline and decisionmaking . . . [in a federalized] military regime." Stanley, 483 U.S. at 682-83. The Second Circuit explained,

> absent some reasoned distinction, justiciability of constitutional tort actions incident to federal and state military service should be co-extensive. This is particularly true in light of the central role the National Guard plays in the national defense and the close working relationship between the National Guard and the United States Army. The policy concerns are the same in both contexts. Allowing § 1983 actions based on injuries arising incident to service in the Guard would disrupt military service and undermine military discipline to the same extent as allowing Bivens actions based on injuries arising incident to service in the United States Army.

Jones, 166 F.3d at 51-52. We find this reasoning sensible and persuasive.

Second, we generally decline to expand liability for injuries arising from military service so as not to tread on the delicate balance of power among the branches of government. The Supreme Court has cautioned against interference with military disputes in the absence of explicit congressional approval. See

14

Dep't of Navy v. Egan, 484 U.S. 518, 530 (1988) ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military . . . affairs."); Feres, 340 U.S. at 146 (declining to draw out a cause of action against military personnel under the FTCA "absen[t] express congressional command").

Likewise, this circuit has been wary of endorsing actions for damages in military contexts. In Lebron v. Rumsfeld, for example, a designated enemy combatant and al Qaeda member, Jose Padilla, alleged numerous constitutional violations at the hands of military officers, including torture and unlawful designation and detention of enemy combatants. See 670 F.3d 540, 546-47 (4th Cir. 2012). Padilla urged this court to imply a new Bivens cause of action for money damages against DOD officials based on "a range of policy judgments pertaining to the designation and treatment of enemy combatants." Id. at 547. Declining to do so, we noted the "explicit constitutional delegation of control over military affairs" to the political branches of government. Id. at 549. We also observed, "whenever the Supreme Court has considered a Bivens case involving the military, it has concluded that 'the insistence . . . with which the Constitution confers authority over the Army, Navy, and militia upon the political branches . . .

15

counsels hesitation in our creation of damages remedies in this field.'" Id. at 550 (quoting Stanley, 483 U.S. at 682) (alterations in original)); see also Cioca v. Rumsfeld, 720 F.3d 505, 510 (4th Cir. 2013) (where current and former service members alleged they were victims of rape and sexual harassment during military service, holding that no Bivens remedy was available, explaining, "It is clear that expansion of a Bivens-based cause of action [for monetary damages in a military context] is the exception, not the rule.").

We see no reason, then, to allow damages actions pursuant to § 1983 against state officials for injuries suffered incident to service -- that the Supreme Court has expressly foreclosed against federal officials -- when Congress has not expressly authorized them. Cf. Crawford, 794 F.2d at 1036 ("Section 1983 . . . claims, like those predicated on Bivens, invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service . . . ." (emphasis supplied)). We thus join our sister circuits in applying the Feres test to § 1983 suits for damages based on injuries sustained incident to service.

3.

We now address whether the Feres "incident to service" test bars relief in the case at hand. To do so, we ask whether the injuries of which Appellant complains -- search and seizure

16

of his emails in violation of the Fourth Amendment -- "ar[o]se out of or [we]re in the course of activity incident to service." Feres, 340 U.S. at 146; Cioca, 720 F.3d at 511.

In the nearly 70 years since the decision, Feres and its progeny have failed to produce a specific element-based or bright-line rule regarding what type of conduct is "incident to service." See United States v. Shearer, 473 U.S. 52, 57 (1985) ("The Feres doctrine cannot be reduced to a few bright-line rules . . . ."). Indeed, the Supreme Court "explicitly rejected a 'special factors' analysis which would consider how military discipline would actually be affected in a particular case." Ricks v. Nickels, 295 F.3d 1124, 1130 (10th Cir. 2002) (discussing Stanley, 483 U.S. at 681). Rather, we look to "whether 'particular suits would call into question military discipline and decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military matters.'" Cioca, 720 F.3d at 515 (quoting Stanley, 483 U.S. at 682) (alteration in original). In other words, "where a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military, the 'incident to service' test is implicated." Id.

If this explanation sounds broad and amorphous, it is. Feres has grown so broad that this court once noted, "the Supreme Court has embarked on a course dedicated to broadening

17

the *Feres* doctrine to encompass, at a minimum, <u>all</u> injuries suffered by military personnel that are even remotely related to the individual's <u>status</u> as a member of the military." <u>Stewart v. United States</u>, 90 F.3d 102, 105 (4th Cir. 1996) (quoting <u>Major v. United States</u>, 835 F.2d 641, 6644 (6th Cir. 1987)) (alteration omitted) (emphases in original); <u>see also</u> Erwin Chemerinsky, Federal Jurisdiction 622 (5th ed. 2007) ("The law is now settled that <u>Bivens</u> suits are never permitted for constitutional violations arising from military service, no matter how severe the injury or how egregious the rights infringement.").

Along these lines, we know that the situs of the injury is not as important as "whether the suit requires the civilian court to second-guess military decisions . . . and whether the suit might impair essential military discipline." <u>Shearer</u>, 473 U.S. at 57. We also know that a plaintiff need not be on duty, <u>see</u> <u>id.</u> (<u>Feres</u> barred suit where off-duty soldier was injured off-base by another soldier), and application of the <u>Feres</u> test does not depend on the military status of the alleged offender, <u>see</u> <u>United States v. Johnson</u>, 481 U.S. 681, 686 (1987) ("[T]his Court has never suggested that the military status of the alleged tortfeasor is crucial to the application of the doctrine."). We do not even need to inquire "whether the discrete injuries to the victim were committed in support of the

18

military mission." Cioca, 720 F.3d at 515 (internal quotation marks omitted).

> Indeed,

> > "Incident to service" is not, of course, a narrow term restricted to actual military operations such as field maneuvers or small arms instruction. It has been held that a member of the military is engaged in activity incident to his military service when he is enjoying a drink in a noncommissioned officers club, and when he is riding a donkey during a ballgame sponsored by the Special Services division of a naval air station, and while swimming in a swimming pool at an airbase.

Hass for Use & Benefit of U.S. v. United States, 518 F.2d 1138, 1141 (4th Cir. 1975) (internal citations omitted) (holding that Feres barred suit when an active-duty serviceman, who was temporarily on off-duty status, was injured when riding a horse he rented from a Marine Corps stable at Cherry Point military base). As one might imagine, decisions on this point have run the gamut. Compare Stewart, 90 F.3d at 104-05 (concluding that appellant's injuries from a car accident with another service member were "incident to service" where appellant "was on active duty at the time of the accident"; "the collision occurred on the grounds of a military base"; and appellant "was engaged in activity directly related to the performance of military obligations when he was injured"); with Ricks, 295 F.3d at 1132 (Ricks's injuries were "incident to service," even though he had

19

been fully discharged and was in a military prison at the time of the injuries, because he was incarcerated for offenses committed during active duty).

Against this backdrop, we readily conclude that Appellant's alleged injuries arose out of activity incident to service. Appellant was on active duty, deployed in a war zone, and used a computer system set up by the DOD for military personnel deployed at Camp Doha. His computer usage was indisputably regulated by AR 380-19, which clearly stated that the system was to be used "only for authorized U.S. government use"; use of the system, "authorized or unauthorized," constituted "consent to monitoring"; and "all communications over the DOD system [could] be monitored." J.A. 307. Taking Appellant's allegations as true, Ingram and von Jess directed Jones and McCarthy to monitor Appellant's emails on this DOD computer system and forward them along because they wished to enact revenge against him. Appellant may claim that this is an "egregious . . . infringement" of his rights, Chemerinsky, Federal Jurisdiction at 622, but there is no question that the alleged infringement occurred incident to Appellant's military service.

That Appellant was a National Guardsman serving in a federal capacity does not change the result. It is true that when National Guardsmen are called to active duty, they "lose

20

their status as members of the state militia . . . ." Perpich v. Department of Defense, 496 U.S. 334, 347 (1990). Nonetheless, Feres has barred suit where a member of the state's National Guard, but also a dual-status federal technician, sued the state adjutant general under § 1983 for conduct occurring when he was serving in both capacities. See Walch v. Adjutant Gen.'s Dep't of Texas, 533 F.3d 289, 296 (5th Cir. 2008); see also Misko v. United States, 453 F. Supp. 513, 514 (D.D.C. 1978) ("[T]here is no longer any question that Feres applies with equal force to members of the National Guard whose injuries are incident to active military duty."). The Third Circuit has similarly explained that "concern for the disruption of the unique relationship of military personnel to their superiors and to other military personnel" could result "if one could hale another into court as a result of activity incident to military service." Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 158 (3d Cir. 2007). And we agree this concern is "equally as compelling in the context of lawsuits brought by [full-time state duty] guardsmen . . . as it is in the context of lawsuits brought by [federal active duty] guardsmen." Id.

Nor does it matter that at the time of the email monitoring and forwarding, Appellees were not in Appellant's direct chain of command. See Stanley, 483 U.S. at 680-81

21

("Feres did not consider the officer-subordinate relationship crucial, but established instead [the] 'incident to service' test . . . ."); cf. Johnson, 481 U.S. at 686 ("[T]his Court has never suggested that the military status of the alleged tortfeasor is crucial to the application of the doctrine.").

For these reasons, we abstain from reviewing Appellant's § 1983 claim based on the Feres "incident to service" test, and we thus affirm, albeit on other grounds, the district court's dismissal of this case.

IV.

Based on the foregoing, the judgment of the district court is

AFFIRMED.

SHEDD, Circuit Judge, concurring:

I agree with the majority that the Feres "incident to service" test warrants our abstention from reviewing Aikens' § 1983 claim. Although that determination is dispositive of this appeal, I write briefly to express my view that even if Feres were inapplicable, the summary judgment is affirmable based on Aikens' failure to present sufficient evidence to withstand the summary judgment motion.

Aikens' § 1983 claim is based on his contention that Ingram and von Jess violated his Fourth Amendment rights, and Aikens "grounds his Fourth Amendment claims in [their] personal involvement in the searches and seizures of his emails." Reply Brief, at 12. In moving for summary judgment, Ingram and von Jess presented evidence showing that they were not personally involved in the email monitoring. Despite having had ample opportunity, Aikens has failed to present any evidence to create a genuine issue of material fact tending to show otherwise. Instead, as the district court found, the record establishes that Ingram and von Jess "were not involved, directly or indirectly, in the [email] monitoring," and "[n]o evidence has been presented that demonstrates either defendant knew how the emails were obtained. . . ." Aikens v. Ingram, 71 F.Supp.3d 562, 571-72 (E.D.N.C. 2014).

23

Aikens' entire case is premised on conclusory allegations and speculation. Of course, such "evidence" is insufficient to withstand summary judgment. Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 540 (4th Cir. 2015). Accordingly, Aikens' § 1983 claim fails as a matter of law. For this reason, in addition to the Feres "incident to service" test, I believe the summary judgment should be affirmed.