# United States Court of Appeals
# for the Federal Circuit

---

**INFO-HOLD, INC.,**
*Plaintiff-Appellant*

v.

**MUZAK LLC,**
*Defendant-Appellee*

---

2014-1167

---

Appeal from the United States District Court for the Southern District of Ohio in No. 1:11-cv-00283, Judge Timothy S. Black.

---

Decided: April 24, 2015

---

DANIEL JOSEPH WOOD, Info-Hold, Inc., Cincinnati, OH, JAMES L. KWAK, Standley Law Group LLP, Dublin, OH, argued for plaintiff-appellant.

BARRY EASTBURN BRETSCHNEIDER, Baker & Hostetler LLP, Washington, DC, argued for defendant-appellee. Also represented by MICHAEL EDWARD ANDERSON, BRIDGET SPRINGER MERRITT; JOHN FRANK MURPHY, Philadelphia, PA; KEVIN W. KIRSCH, Cincinnati, OH.

---

Before REYNA, WALLACH, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

This case comes before us on appeal of numerous rulings unfavorable to Info-Hold, Inc. ("Info-Hold"), owner of U.S. Patent No. 5,991,374 (the "'374 patent"), the sole patent in the dispute. Info-Hold asserted the '374 patent against Muzak LLC ("Muzak") and Applied Media Technologies Corporation ("AMTC") in separate lawsuits before the same judge in the United States District Court for the Southern District of Ohio. Those suits led to separate appeals, which were argued on the same day before the same panel. We address the issues raised in Info-Hold's appeal in the AMTC suit in a separate opinion.

Following claim construction, the district court granted summary judgment to Muzak that, notwithstanding infringement, Info-Hold was not entitled to reasonable royalty damages, and that Muzak did not induce infringement of the '374 patent. For the reasons set forth below, we *reverse* the grant of summary judgment of no damages for infringement, we *vacate* the summary judgment of no induced infringement, and we *affirm* the district court's construction of the sole claim term in dispute.

## BACKGROUND

The '374 patent is directed to systems, apparatuses, and methods for playing music and messages (e.g., advertisements) through telephones and public speaker systems. Playback order of the music and message tracks is set on a remote server. The remote server generates and sends control signals to message playback devices, telling them to access and play back tracks in a specified order. One use of the disclosed technology involves directing the output of the message playback devices to a public address system at retail stores, so customers can hear the music and advertisements while shopping. The output of the message playback device can also be directed to a

music-on-hold ("MOH") system, which plays the tracks over the telephone to callers who are on hold. The inventor of the patent, Joey C. Hazenfield, assigned the patent to Info-Hold in exchange for a 5 percent royalty on sales of products embodying the patent's technology. ("Hazenfield Assignment").

Prior to the filing of the suit against Muzak, a third-party requester initiated an *ex parte* reexamination of the '374 patent. To overcome prior art during reexamination, Info-Hold amended several independent claims by adding the limitation "when a caller is placed on hold" to specify the timing of track playback. Info-Hold argued to the examiner that, after the addition of the limitation "when a caller is placed on hold," the claims were patentable because the prior art "fails to teach, or even suggest, a music-on-hold-compatible telephone system or playing messages or generating signals when callers are placed on hold . . . ." J.A. 473. The examiner allowed the claims on the basis of Info-Hold's argument. J.A. 361. Independent claim 7 is representative of the technology claimed in the '374 patent and recites:

> 7. A programmable message delivery system for playing messages on message playback devices at one or more remote sites comprising:
>
> > a communication link;
> >
> > a plurality of message playback devices, each of said message playback devices communicating with a respective telephone system and comprising a storage device for storing messages and for playing selected ones of said messages through an output of said message playback device *when a caller is placed on hold*; and

a computer remotely located from said plurality of message playback devices and operable to generate and transmit control signals via said communication link for controlling at least one of said plurality of message playback devices;

each of said plurality of message playback devices being adapted to receive said control signals via said communication link and being programmable to access at least one of said messages from said storage device and to provide said accessed message to said output in accordance with said control signals *when a caller is placed on hold*;

wherein said computer comprises a display device and is programmable to generate screens on said display device that include user selectable menu items for selection by an operator to define relationships between said plurality of message playback devices and said messages, the screens guiding an operator to make choices selected from the group consisting of which of said messages are to be played, which of said plurality of message playback devices are to play said selected messages, a time of day when said control signals are to be transmitted to said message playback devices, a date on which said control signals are to be transmitted to said message playback devices, a sequence in which said selected messages are to be played, and how many times to repeat at least one of said selected messages in said sequence, and to generate said control signals to implement said choices via said message playback devices.

'374 patent reexamination certificate, col. 1 ll. 28-67 (emphasis added).

The parties in this case make and sell MOH systems. Info-Hold sells a product called "Info-Link" that purportedly embodies the features of the '374 patent, including remote programming capabilities and the ability to select messages for playback at particular locations. Muzak makes and sells two music and messaging delivery devices, the Encompass LE 2 and the Encompass MV, which Info-Hold alleges infringe the '374 patent.

### LITIGATION HISTORY

In 2006, Info-Hold contacted Muzak on at least two occasions regarding the possibility that Muzak's products infringe the '374 patent. On February 21, 2006, Info-Hold's in-house counsel, Daniel Wood, sent a letter to Muzak's General Counsel, Michael Zendan, drawing attention to the '374 patent and asking whether any of Muzak's products might practice the patented technology. Mr. Wood specifically requested to be informed of the results of any "detailed analysis of the '374 patent" already conducted by Muzak. Mr. Wood also requested that Muzak conduct such an analysis. J.A. 2890. Muzak did not respond to Info-Hold's letter.

Mr. Wood called Mr. Zendan in June 2006. In that conversation, Mr. Wood explained the technology alleged to be covered by the '374 patent. Mr. Wood inquired whether Muzak's products included the ability to control music and/or message playback at one or more other locations from a single, remotely located computer. *See, e.g.*, J.A. 2815, 6:17-21; 2816, 13:14-22. During the course of the conversation, Mr. Zendan expressed surprise upon learning that the '374 patent covered the playback of music as opposed to only messages. Mr. Zendan stated, "We're talking about the music, how they control their music. . . . Well . . . yeah, we have a system where there probably is some control of the music." J.A. 2817, 14:1-7.

In light of this fact, Mr. Zendan told Mr. Wood that he would take another look at the '374 patent in relationship to Muzak's products. *Id.* at 14:17-22. Mr. Zendan asked whether Info-Hold wanted Muzak to "look at our technology from the standpoint of . . . music that you would hear in a store . . ." *Id.* at 15:22-16:5. Mr. Wood replied, "Yes." *Id.* at 16:6.

Info-Hold filed suit in May 2011, alleging that Muzak infringed the '374 patent through the manufacture and sale of Muzak's Encompass LE 2 and Encompass MV products. Info-Hold also alleged that Muzak induced and contributed to the infringement of the '374 patent. Muzak answered, seeking a declaratory judgment that the '374 patent was invalid and that it did not indirectly infringe the patent.

During the *Markman* phase of the litigation, the parties requested construction of several terms, including the term "when a caller is placed on hold." The parties' dispute focused on whether "when" meant at the moment the caller was placed on hold (Muzak's position) or during the period the caller was on hold (Info-Hold's position). The district court construed this term to mean "at the moment a caller is placed on hold." Based on the district court's construction, the parties stipulated to non-infringement of the asserted independent claims of the '374 patent containing the phrase "when a caller is placed on hold," and all claims depending from those independent claims.

On the issue of damages, the parties disagreed about the royalty to which Info-Hold would be entitled if infringement were found. Info-Hold attempted to base its damages case on the report and testimony of its expert, Robert White, who performed tax and audit work for Info-Hold for fifteen years prior to the suit. Mr. White employed the entire market value rule, though his report was silent on whether the patented features drove de-

mand for the accused products. As part of the reasonable royalty analysis, Mr. White considered a license of the '374 patent to Trusonic, Inc. ("Trusonic License"), entered into as part of a litigation settlement, and the Hazenfield Assignment. Mr. White's royalty calculation relied on the 25-percent rule of thumb. Muzak introduced the report of its expert, David Paris. Mr. Paris considered the Trusonic License, the Hazenfield Assignment, a settlement agreement between Muzak and a third party for use of patents comparable to the '374 patent, the license of several Info-Hold patents to a third party related to MOH systems, and the financial data of Info-Hold and Muzak during the relevant period. Based on these sources of information, Mr. Paris determined that a royalty between 1 and 2 percent was reasonable, if infringement were established.

The parties filed numerous summary judgment motions. Those that are relevant to this appeal are Muzak's motions for summary judgment that (1) Muzak did not induce infringement of the '374 patent; (2) Info-Hold is not entitled to lost profits; and (3) Info-Hold is not entitled to reasonable royalty damages. The district court granted each of these motions. The district court granted Muzak's motion that it did not induce infringement on the basis that Muzak did not possess actual knowledge that the acts it allegedly induced constituted infringement of the '374 patent. Further, no pre-suit communication between Mr. Wood and Mr. Zendan identified which claims were allegedly infringed or which products were allegedly infringing. J.A. 59-60. The court granted Muzak's motion that Info-Hold was not entitled to lost profits because Info-Hold never introduced evidence of the profits it earned from solely the patented technology. J.A. 65-67.

Muzak's summary judgment motion related to reasonable royalty damages was combined with a motion to strike the expert report of Mr. White, Info-Hold's damages witness, and to preclude his testimony. Because Mr. White was not qualified to aid the understanding of the

trier of fact on the issue of damages, and because he based the royalty rate in his report upon the 25-percent rule of thumb, which this court discredited in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), the district court struck the report and precluded his testimony. J.A. 81-87. Turning to Muzak's motion on reasonable royalties, the district court explained that Info-Hold did not disclose any other expert witness, and Info-Hold's lay witnesses were not qualified to testify on the issue of damages. According to the district court, this left Info-Hold without any evidence to make a prima facie case regarding reasonable royalty damages. J.A. 88-89. Thus, the court granted summary judgment to Muzak on the issue of reasonable royalty damages. J.A. 89.

Muzak also filed a motion for summary judgment of non-infringement on all asserted claims and that all asserted claims are invalid for lacking enablement. Info-Hold filed a motion for summary judgment on the issue of infringement. Before ruling on these motions, the district court ordered Info-Hold to show cause why final judgment should not be entered against Info-Hold in light of its inability to prove lost profits or reasonable royalty damages. In its order ruling on Info-Hold's show cause memorandum, the court reasoned that after the exclusion of the evidence from Mr. White, Info-Hold had "not demonstrated that it [wa]s entitled to any measurable remedy," including a reasonable royalty. J.A. 98-99. Thus, the court entered final judgment against Info-Hold and dismissed the case.

Info-Hold appeals (1) the propriety of the district court's entry of summary judgment against it, and subsequent dismissal, based on a purported inability to prove any reasonable royalty damages; (2) the construction of the term "when a caller is placed on hold"; and (3) the grant of summary judgment of no induced infringement based on supposed lack of evidence of knowledge or willful

blindness.     We  have  jurisdiction  under  28  U.S.C.
§ 1295(a)(1).

## DISCUSSION

### I.  DAMAGES

Info-Hold argues that the district court is required to award some amount of damages when infringement is proven.  An award is necessary, it argues, even when there is little or no satisfactory evidence as to the amount of the reasonable royalty, because the court must still employ the *Georgia-Pacific* factors, *sua sponte*, to determine the royalty rate.  Info-Hold contends that the district court's dismissal on summary judgment for alleged lack of evidence of a reasonable royalty is erroneous because the court failed to invoke a *Georgia-Pacific* analysis.

According to Info-Hold, there were numerous pieces of evidence properly admitted to the record from which the district court could determine a reasonable royalty.  Info-Hold points to evidence it cited to the district court in its opposition to Muzak's motion for summary judgment that Info-Hold was not entitled to a reasonable royalty, including the Hazenfield Assignment, the Trusonic License, and documents relied upon by both experts in forming their opinions.  Info-Hold also points to evidence of record that was not cited in its opposition, including a declaration by Mr. Hazenfield and the deposition transcripts of Mr. Hazenfield and Mr. Paris.  Thus, even without Info-Hold's expert's report, Info-Hold contends that there were numerous pieces of record evidence from which a reasonable royalty could be determined.

Muzak responds that the district court correctly struck Mr. White's expert report, leaving Info-Hold with no evidence upon which a reasonable royalty determination could be made.  Addressing the evidence Info-Hold alleges was of record, Muzak points out that Mr. White

testified that the Hazenfield Assignment and Trusonic License were not overly relevant to a reasonable royalty determination. Muzak argues that the documents relied upon by Mr. Paris in his expert report are not admissible because they cannot be authenticated. According to Muzak, the Sixth Circuit prevents one party from calling another party's expert, even if the latter party does not intend to use the expert. Without the ability to call Mr. Paris as a witness, Muzak argues that Info-Hold would have no one to authenticate the documents on which he relied.

A.  The District Court's Decision To Strike Mr. White's Report And Preclude His Testimony

For issues not unique to patent law, we apply the law of the regional circuit. *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1354 (Fed. Cir. 2013). The Sixth Circuit reviews a district court's evidentiary rulings, including the grant of a motion to strike and the decision to exclude expert testimony, for an abuse of discretion. *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 722 (6th Cir. 2012); *Seay v. Tenn. Valley Authority*, 339 F.3d 454, 480 (6th Cir. 2003). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (internal quotation marks and citation omitted).

The district court did not abuse its discretion in striking Mr. White's expert report. The district court stated that Info-Hold's reliance on the entire market value rule, without presenting evidence that the patented features drove customer demand, was "improper" and itself sufficient to strike Mr. White's evidence. J.A. 92; *cf.* J.A. 85. Info-Hold has not appealed this basis for striking the report. Mr. White's damages analysis was also deficient because he relied on the 25-percent rule, which this court

discredited as "fundamentally flawed" in *Uniloc*. 632 F.3d at 1315 (deeming evidence relying on the 25-percent rule as inadmissible for failing to tie the royalty base to evidence in the case). We therefore affirm the striking of Mr. White's evidence.

B.   The District Court's Grant Of Summary Judgment For A Purported Lack Of Damages Evidence

The Sixth Circuit reviews a grant of summary judgment *de novo*. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Summary judgment is appropriate when there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). A genuine issue of material fact exists when there is evidence sufficient to allow a jury to return a verdict for the nonmoving party. *Loyd*, 766 F.3d at 588 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In reviewing a grant of summary judgment, the Sixth Circuit accepts all of the nonmovant's evidence as true and draws all reasonable inferences in the nonmovant's favor. *Id.* (citing *Liberty Lobby*, 477 U.S. at 255).

In *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014), we explained that at "summary judgment . . . a judge may only award a zero royalty . . . if there is no genuine issue of material fact that zero is the only reasonable royalty." Therefore, if there exists a factual issue regarding whether the patentee is due any non-zero royalty, the district court must deny summary judgment. *Id.* Where the patentee's proof is weak, the court may award nominal damages. *Id.* Moreover, we explained that a patentee's failure to show that its royalty estimate is correct is insufficient grounds for awarding a royalty of zero. *Id.* By extension, the exclusion of the patentee's damages evidence is not sufficient to justify granting summary judgment. As we made clear in *Dow*

*Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003), 35 U.S.C. § 284 requires the district court to award damages "in an amount no less than a reasonable royalty" even if the plaintiff's has no evidence to proffer. We explained that, in such a case, the district court should consider the *Georgia-Pacific* factors "in detail, and award such reasonable royalties as the record evidence will support." *Id.* at 1382 (footnote omitted).

Here, as in *Apple*, the issue of infringement has not been decided. The district court granted summary judgment to Muzak on the issue of reasonable royalty damages because, after striking its expert's report and precluding him from testifying, Info-Hold was unable to make a prima facie case as to any reasonable royalty rate. There was other record evidence which the district court could use as a basis for determining a reasonable royalty, even after the exclusion of Mr. White's report and testimony. In his deposition, Mr. Paris affirmed that reasonable royalty rates for Muzak's Encompass LE 2 and Encompass MV systems would be 1 and 2 percent, respectively. He also discussed the Trusonic License, the royalty paid to Mr. Hazenfield under his assignment of the patent to Info-Hold, the profitability of the accused systems, and more.

The Federal Rules of Civil Procedure allow the use of deposition testimony for any purpose allowed by the Federal Rules of Evidence. Fed. R. Civ. P. 32(a)(2). An Advisory Committee Note to Rule 32(a) explains that the rule was updated to make "clear that the rules of evidence are to be applied to the depositions offered at trial as though the deponent were then present and testifying at trial" so as to eliminate "certain technical hearsay objections" based on the deponent's "absence from court." Here, Muzak has not specifically objected to the admissibility of Mr. Paris' deposition testimony. We leave to the district court to decide whether the deposition may be considered in determining the reasonable royalty rate. In

any case, there is other record evidence to demonstrate the existence of a genuine issue of material fact as to whether zero is a reasonable royalty rate.

In light of the foregoing, we *reverse* the district court's grant of summary judgment because there was no evidence of record supporting a zero royalty and the evidence of record which could be used to determine a non-zero royalty was ignored. We further *remand* the case to the district court for further proceedings consistent with this opinion.

## II.  INDUCED INFRINGEMENT

To prove inducement of infringement, the patentee must "show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011)). The inducement knowledge requirement may be satisfied by a showing of actual knowledge or willful blindness. *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1366 (Fed. Cir. 2013), *cert. granted on other grounds*, 135 S. Ct. 752 (2014). Willful blindness is a high standard, requiring that the alleged inducer (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact. *Global-Tech*, 131 S. Ct. at 2070.

Issues of material fact remain as to whether Muzak acted with knowledge that its actions constituted infringement of the '374 patent. The record shows that Info-Hold repeatedly contacted Muzak in an effort to put Muzak on notice of the '374 patent and Muzak's patent infringement. During the conversation between Mr. Wood and Mr. Zendan, Mr. Zendan raised questions about the specific functionality alleged to be covered by the '374 patent. *See* J.A. 2817, 14:1-3. Mr. Zendan admitted that

Muzak had a system where there was probably some control of the music. *Id.* at 14:5-7. Mr. Zendan told Mr. Wood he would "look again at [Info-Hold's] patent." *Id.* at 14:19-20. Despite Mr. Wood's letter requesting that Mr. Zendan honor his statement to look into whether Muzak's systems infringed the '374 patent, there is no evidence that Muzak did so.

This record raises issues of material fact as to whether Muzak may have subjectively believed there was a high probability it infringed the '374 patent and took deliberate actions to avoid learning whether it actually did. In other words, the record raises the issue of whether Muzak willfully blinded itself to whether it acted to induce infringement after becoming aware of the existence and alleged functionality of the '374 patent. *See Global-Tech*, 131 S. Ct. at 2070.

Therefore, we *vacate* the district court's grant of summary judgment of no induced infringement and *remand* for further consideration on the issue of Muzak's willful blindness.

### III. CONSTRUCTION OF "WHEN A CALLER IS PLACED ON HOLD"

During claim construction, the parties sought competing constructions of the term "when a caller is placed on hold," as that term influenced whether music or message playback had to begin at the time the caller was placed on hold, or could begin at some time prior to, and independent of, when a caller was placed on hold. As used in this term, the word "when" could either mean during a period of time (e.g., she played sports when she was in high school) or at one moment of time (e.g., the lights go on when you flip the switch). The district court construed the term to mean "at the moment a caller is placed on hold."

Our review of a district court's claim construction based solely on the patent's intrinsic record is de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).  The words of a claim are generally given their ordinary and customary meaning, as understood by one of ordinary skill in the art reading the claims in the context of the specification and prosecution history.  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  "Claims must be interpreted with an eye toward giving effect to all terms in the claim."  *Becton, Dickinson & Co. v.  Tyco Healthcare Grp., LP,* 616 F.3d 1249, 1257 (Fed. Cir. 2010) (citation and internal quotation marks omitted).

We hold that the district court's construction remains faithful to our principles of construction and is supported by the intrinsic evidence.  Claims of the '374 patent cover actions such as accessing messages from a storage device, providing the accessed messages to the playback device, and playing the messages on the playback device, each occurring "when" the caller is "placed on hold."  *See, e.g.*, '374 patent, claims 7, 17 ('374 patent reexamination certificate, col. 1 ll. 37 & 48-49; col. 2 l. 61).  There is no disclosure that any of these actions, or any other action, occurs before or while the caller is on hold.  Every instance of the words "on hold" in the '374 patent is preceded by the word "placed."  Thus, to construe this term to not require that playback starts at the time the caller is placed on hold, as Info-Hold asks us to do, would be to read the word "placed" out of the claims of the patent.  Our precedent prohibits us from adopting such a construction.  *See Becton, Dickinson*, 616 F.3d at 1257.

Here, the intrinsic evidence supports the district court's construction determinations.  During reexamination of the '374 patent, Info-Hold amended the claims by adding the limitation "when a caller is placed on hold" to avoid anticipation by the prior art.  Info-Hold argued that the addition of this limitation overcame the prior art

because the prior art did "not teach, or even suggest . . . playing messages or generating signals when callers are placed on hold." J.A. 473. As claim 7 shows, the generated signals "control" the message playback devices by directing them to access messages and play them back through the output. If the signals themselves are generated "when callers are placed on hold," as Info-Hold argued during reexamination, then the playback resulting from the control signal must also occur at that time, not before the caller is placed on hold. Thus, both the prosecution history and the claim language support a construction of the term "when a caller is placed on hold" to mean "at the moment the caller is placed on hold."

For these reasons, we *affirm* the district court's construction of the term "when a caller is placed on hold."

CONCLUSION

Because record evidence exists upon which the district court can base a reasonable royalty analysis, we *reverse* the grant of summary judgment that Info-Hold cannot prove damages. We vacate the grant of summary judgment that Muzak did not induce infringement on the basis that there is a genuine issue of material fact as to Muzak's subjective belief regarding its infringement of the '374 patent. Finally, because the district court's construction of the term "when a caller is placed on hold" gives meaning to all claim terms and is supported by the intrinsic record, we *affirm* the district court's construction. We *remand* the case for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART AND REMANDED**

COSTS

Each party shall bear its own costs.