# United States Court of Appeals for the Federal Circuit

---

**ASTORNET TECHNOLOGIES INC.,**
*Plaintiff-Appellant*

v.

**BAE SYSTEMS, INC.,**
*Defendant-Appellee*

**MORPHOTRUST USA, LLC,**
*Defendant-Appellee*

**NCR GOVERNMENT SYSTEMS, LLC,**
*Defendant-Appellee*

---

2014-1854, 2015-1006, 2015-1007

---

Appeals from the United States District Court for the District of Maryland in Nos. 8:14-cv-00245-RWT, 8:14-cv-00543-RWT, 8:14-cv-00547-RWT, Senior Judge Roger W. Titus.

---

Decided: September 17, 2015

---

GEOFFREY MASON, Moarbes LLP, Gaithersburg, MD, argued for plaintiff-appellant.

SCOTT A. FELDER, Wiley Rein, LLP, Washington, DC, argued for defendant-appellee BAE Systems, Inc. Also

represented by KEVIN PAUL ANDERSON; MATTHEW JAMES DOWD, Andrews Kurth, LLP, Washington, DC.

PETER MICHAEL BOYLE, Kilpatrick Townsend & Stockton LLP, Washington, DC, argued for defendant-appellee NCR Government Systems, LLC. Also represented by ADAM HOWARD CHARNES, Winston-Salem, NC.

RICHARD L. BROPHY, Armstrong Teasdale LLP, St. Louis, MO, for defendant-appellee Morphotrust USA, LLC. Also represented by JENNIFER E. HOEKEL.

MEGAN BARBERO, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for amicus curiae United States. Also represented by MARK R. FREEMAN, BENJAMIN C. MIZER.

––––––––––––

Before PROST, *Chief Judge,* NEWMAN, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Astornet Technologies, Inc. alleges that it is sole exclusive licensee and owner of all rights in United States Patent No. 7,639,844, issued in December 2009 to Michael Haddad as the inventor and entitled "Airport vehicular gate entry access system." In what ended up as three separate actions, Astornet asserted the patent against three corporations—NCR Government Systems, LLC; MorphoTrust USA, LLC; and BAE Systems, Inc. Astornet alleged that (a) NCR, MorphoTrust, and a subsidiary of BAE Systems, Inc. had contracts with the Transportation Security Administration (TSA), an agency of the United States government, to supply TSA certain boarding-pass scanning systems, (b) TSA's use of the equipment infringed and would infringe the patent, and (c) NCR and MorphoTrust were bidding for another contract to supply

modified equipment whose use by TSA would also infringe.

The district court dismissed the actions, relying on several grounds, among them that Astornet's exclusive remedy for the alleged infringement was a suit against the United States in the Court of Federal Claims under 28 U.S.C. § 1498. While rejecting the district court's rationale for dismissal on other grounds, we agree that § 1498 bars these actions. We therefore affirm the dismissal.

BACKGROUND

A

Because these consolidated cases come to us on appeals from dismissals under Fed. R. Civ. P. 12(b)(6), we rely on the facts as alleged in the operative complaints and attachments (there being no material supplemental facts of public record subject to judicial notice). *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In June 2009, TSA sought bids for equipment it would use for scanning airline passengers' boarding passes at airports in a Credential Authentication Technology-Boarding Pass Scanning System (CAT/BPSS), requiring that bidders set up demonstration kiosks for TSA's review. Astornet bid but was unsuccessful, at least partly because it did not provide the required demonstration kiosk. In September 2011, TSA entered into contracts with NCR, a company for which MorphoTrust eventually took over as the supplier under the contract, and a corporation called BAE Systems Information Solutions Inc., which is a subsidiary of a subsidiary of BAE Systems, Inc. (according to appellees' undisputed representation to this court citing BAE Systems, Inc.'s website).

TSA made some purchases under the initial phase of the 2011 contracts, but it postponed further procurements in June 2012. More than a year later, TSA solicited proposals for revised CAT/BPSS equipment, setting January 21, 2014 as the due date for bids. Astornet, NCR, and MorphoTrust, but not any BAE Systems Inc. entity, submitted proposals. The operative complaints here were filed before any award in the new solicitation.

B

The litigation that forms the backdrop to the present appeals began some months after the September 2011 award of contracts. On March 9, 2012, Mr. Haddad, in his own name, filed two actions alleging infringement of the '844 patent, in both of which he stated that he was "doing business as wholly owned Astornet Technologies, Inc." J.A. V-1-1; J.A. VI-1-1. He filed one action in the Court of Federal Claims under 28 U.S.C. § 1498, naming the United States as the defendant. He filed the other action in district court in the District of Maryland, naming several defendants: NCR; MorphoTrust's predecessor (under the 2011 contract); two subsidiaries of BAE Systems, Inc. (including BAE Systems Information Solutions); and TSA and the United States Army. Both actions focused on the TSA contracts—the 2011 contracts and those proposed in the resolicitation—and the equipment purchased and to be used under those contracts.

The simultaneous filing of the two complaints involving essentially the same operative facts caused a problem, under 28 U.S.C. § 1500, for Mr. Haddad's ability to maintain his action in the Court of Federal Claims. *See, e.g.*, *United States v. Tohono O'Odham Nation*, 563 U.S. 307 (2011) (Court of Federal Claims lacks jurisdiction if filed when other case involving substantially the same operative facts is pending in another court); *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004) (simultaneously filed cases subject to § 1500). On May 10, 2012, the

government moved to dismiss the Court of Federal Claims action under § 1500.  In that motion the government explained that "the simplest solution is for plaintiff to voluntarily dismiss both this action and the district court action, and then refile his section 1498 action in the Court of Federal Claims."  J.A. V-13-7 to -8.  On June 5, 2012, the Court of Federal Claims dismissed the case before it.  That dismissal is not challenged here.

The dismissal occurred even though, in the meantime, Mr. Haddad, proceeding pro se, had dismissed his Maryland district court action before any substantive litigation occurred—thus beginning a series of filings to correct the initial dismissal to try to ensure that the dismissal would be without prejudice to Mr. Haddad's ability to pursue his claims on their merits in the proper forum.  On May 8, 2012, before any defendant even appeared in the case, Mr. Haddad filed a notice withdrawing his case "with prejudice"; the district court approved the filing the next day, and the endorsed filing was entered on the docket on May 11, 2012.  *See* J.A. VI-20-1 (district court ruling, quoting May 8 filing).  "That same day, Haddad filed a 'Motion to Withdraw,' attempting to 'supersede' and 'replace' his May 8th notice of dismissal and 'withdraw [his case] without prejudice.'"  *Id.* (alteration in original).  On May 16, Mr. Haddad filed a letter "explaining that he made a mistake when he dismissed the action on May 8th 'with prejudice.'"  *Id.*  Almost six months later, on November 7, the district court "entered an Order providing that the case remained closed and dismissed with prejudice pursuant to Haddad's May 8th filing."  *Id.*  A week later, Mr. Haddad filed a motion for relief, which the court denied as moot on November 15.  *Id.*  On November 19, Mr. Haddad filed further motions, which the court denied on November 28.  J.A. VI-20-1 to -2.

On December 12, 2012, Mr. Haddad—represented by counsel—moved to reconsider at least the most recent denial of relief.  The district court granted the motion on

August 8, 2013.  J.A. VI-20-1 to -4.  It found that Mr. Haddad had made an " 'honest mistake' " and that correcting the mistake would not unfairly prejudice the defendants.  J.A. VI-20-3.  On that basis, the court ordered: "the case is reopened solely for the purpose of dismissing it **WITHOUT PREJUDICE**"; and "the Clerk of this Court shall **CLOSE** this case."  J.A. VI-20-4.

C

Not long after the process of correcting Mr. Haddad's 2012 dismissal was completed in August 2013, the TSA, which in June 2012 had postponed further purchases under the 2011 contracts, commenced its resolicitation.  On January 27, 2014, six days after bids were due, Astornet (not Mr. Haddad) filed a patent-infringement action in the District of Maryland, naming NCR, MorphoTrust (not its contractual predecessor), and BAE Systems, Inc. (not BAE Systems Information Solutions Inc.).  That action—the "245 action" (its docket number is 14-cv-245)—is one of the three cases now before us.  The complaint alleges direct infringement by the three named defendants for making, using, selling, and offering to sell "products that embody the patented invention"; it says nothing about indirect infringement.  J.A. II-1-13.

One month later, on February 24 and 25, 2014, Astornet separated the three defendants into three separate cases.  It did so by (a) filing an amended complaint (and then a corrected amended complaint) in the 245 action, which named only BAE Systems, Inc. as a defendant, and (b) filing two new complaints, one each against NCR (the "547 action") and MorphoTrust (the "543 action").  Those three complaints—which are the currently operative complaints in the cases before us—differ substantively from the original complaint in the 245 action in a significant way: they allege only indirect (induced and contributory) infringement under 35 U.S.C. § 271(b) & (c).  Indeed, the three complaints recite that the "manufac-

ture, sale, and delivery of full and prototype CAT/BPSS systems to the TSA alone . . . did not result in infringement," because the sole independent claim of the patent requires certain processing "steps to be performed," and those steps "are performed when the CAT/BPSS system is being used for its intended purpose to maintain security in sterile areas by, *inter alia*, checking boarding passes against passenger photo identification and detecting fraudulent identifications." J.A. II-13-6; *see* J.A. III-1-6; J.A. IV-1-6. "Accordingly, [each defendant] infringed the '844 patent at least by inducing the TSA to use the [defendant's] CAT/BPSS system for these purposes by providng the TSA both with CAT/BPSS prototypes and 10 full CAT/BPSS systems, and instructing the TSA regarding the use of these systems in a manner which infringes . . . ." J.A. II-13-7; *see* J.A. III-1-6; J.A. IV-1-6 to -7.

NCR and BAE Systems filed motions to dismiss in their cases. Both parties argued that 28 U.S.C. § 1498 barred the suits by limiting Astornet's remedy to an action against the United States in the Court of Federal Claims. The district court agreed. J.A. 63–71.

BAE Systems, Inc. argued for dismissal of the action against it on an additional ground. It contended that "Astornet had sued the wrong defendant because nonparty BAE Systems Information Solutions Inc., not defendant BAE Systems, Inc., was party to the TSA contract." Appellees' Br. 14. The district court agreed. J.A. 60–61.

NCR, for its part, argued that the case against it must be dismissed under Fed. R. Civ. P. 41(a)(1)(B), which in certain circumstances deems a second voluntary dismissal to be a judgment on the merits, with whatever preclusive effect on future claims such a judgment has under claim-preclusion law. *See Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 47 (4th Cir. 1990). NCR contended that Mr. Haddad's dismissal of his earlier

Maryland suit constituted a first voluntary dismissal, that Astornet's filing of an amended complaint in the 245 action (which limited that action to BAE Systems, Inc. as the sole defendant) constituted a second voluntary dismissal, and that the latter filing "operat[ed] . . . as an adjudication on the merits" that precluded continuation of the 547 action against NCR. The district court agreed. J.A. 62–63.

The district court then sua sponte dismissed the case against MorphoTrust. The court stated simply that the MorphoTrust case was one "in which the same defense has been asserted based on the same contract documents." J.A. 71.

Astornet filed appeals in all three cases. We consolidated the appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### DISCUSSION

Astornet challenges each of the district court's rationales for dismissal. A dismissal under Fed. R. Civ. P. 12(b)(6) is reviewed de novo. *Cioca v. Rumsfeld*, 720 F.3d 505, 508 (4th Cir. 2013). We affirm the dismissal here based on 28 U.S.C. § 1498(a). We also address the two other rationales for dismissal that the district court set forth, because NCR, MorphoTrust, and BAE Systems, Inc. have defended the judgment on those grounds and it is unclear if the alternative rationales would have a continuing effect if left undisturbed. We reject those two alternative rationales.

### A

Section 1498(a) of Title 28, U.S. Code, provides:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or

manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .

For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

The provision provides a cause of action against the United States (waiving sovereign immunity) for a patent owner to recover damages for the unauthorized use or manufacture of a patented invention "*by or for* the United States." *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 663 n.15, 664 (1999) (Stevens, J., dissenting); *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 344 (1928); *Zoltek Corp. v. United States*, 672 F.3d 1309, 1312 (Fed. Cir. 2012) (en banc); *Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371, 1377–78 (Fed. Cir. 2009). At the same time, the statute protects government contractors against infringement liability and remedies where it applies. As indicated by the statute's use of the definite article in providing "*the* owner's remedy" and its statement that the remedy is for payment of the owner's "entire compensation," the statute, within its ambit, makes the remedy against the United States exclusive. *See Richmond Screw Anchor*, 275 U.S. at 343; *Zoltek*, 672 F.3d at 1316. The Supreme Court long ago said of the 1918 enactment that introduced the key language of § 1498(a) that the "purpose of Congress" was "to stimulate contractors to furnish what was needed" by the government, "without fear of becoming liable themselves for infringements to inventors or the owners or assignees of

patents." *Richmond Screw Anchor*, 275 U.S. at 345; *see TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1059–60 (Fed. Cir. 1986) ("the policy behind the 1918 amendment was to relieve private Government contractors from expensive litigation with patentees, possible injunctions, payment of royalties, and punitive damages").

The provision squarely applies to Astornet's allegations in the three operative complaints at issue. The complaints allege only indirect infringement. Specifically, the complaints allege that NCR, MorphoTrust, and BAE Systems, Inc. induced (and contributed to) direct infringement by TSA by virtue of TSA's use of equipment supplied by the three defendants. The direct infringement alleged as a prerequisite for the alleged indirect infringement, *see Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 & n.3 (2014), is a use of the patented invention "by . . . the United States."

The claim of use of the patented invention by the United States is squarely within the statutory terms. The language is not limited to claims that are *filed against the United States or its government agencies.* And it would cut a substantial hole in the provision, and its intended function, to read it to be limited in that way. Doing so would expose a significant range of government contractors to direct liability (and possible injunctive remedies), namely, those accused of indirect infringement of claims directly infringed by the government. There is no justification for departing from the clear meaning of the text to produce a result that runs counter to the evident, established statutory policy.

The foregoing analysis does not depend on any inquiry into government authorization or consent. We therefore undertake no such inquiry. And the straightforward "use by the United States" analysis requires dismissal based on the sole claims of infringement—*i.e.*, indirect infringement—actually in the operative complaints.

Astornet makes some passing references in this court to an additional theory of direct infringement for certain testing activities by the defendants. But those references do not change our conclusion. A theory of direct infringement is not asserted in the operative complaints, and the complaints' factual allegations cannot be deemed adequate for a direct-infringement theory without drawing inferences that are too strained given the distinctness of that theory from the only theories actually pleaded. Such a theory, moreover, would raise questions under § 1498 about whether, even if the core of the case (indirect infringement based on government use after delivery of the equipment) had to be dismissed, a small part of the case (involving testing) could nevertheless remain—which might also raise new problems under 28 U.S.C. § 1500 if Astornet sued the United States in the Court of Federal Claims under § 1498. Astornet nowhere argues to us that only part, rather than the whole, of its case should be reinstated; it presents only an all-or-nothing argument. In these circumstances, we disregard the new references to direct infringement.

B

The district court relied on one ground of dismissal that is unique to BAE Systems, Inc., not applicable to the other defendants. BAE Systems, Inc. contended that the amended complaint—which, as relevant to the present issue, specifically alleged inducement by BAE Systems, Inc. under 35 U.S.C. § 271(b)—did not sufficiently state a claim against it. The core contention was and is that it was not BAE Systems, Inc., but a corporate subsidiary (two levels down), that entered into the contract with TSA to supply the equipment whose use by TSA constitutes the alleged direct infringement required for the claimed indirect infringement. According to the appellees' brief here, "BAE Systems, Inc. argued that . . . Astornet had sued the wrong defendant because non-party BAE Systems Information Solutions Inc., not defendant BAE

Systems, Inc., was party to the TSA contract" attached to the amended complaint. Appellees' Br. 14.

In dismissing the case against BAE Systems, Inc., the district court stressed that the (indirect) corporate subsidiary, not BAE Systems, Inc., was the contracting party. J.A. 60–61. The court then stated, in seemingly broad terms, that "[t]here is absolutely nothing in the complaint to state a basis for suing BAE Systems, Inc., arising out of the performance by another company of a contract with the TSA." J.A. 61. But the court immediately adopted a narrower focus in explaining what it found missing from the amended complaint (*id.*):

> It is routine in corporate America for multiple entities to be created for the very specific purpose of isolating the liability of one company from another. There's nothing wrong with that. That is as American as apple pie. It only becomes un-American when a properly pleaded complaint can allege that that in effect creates a fraudulent situation or it's necessary to overcome a paramount equity or that there is an alter ego or something that would indicate a basis for piercing through it.
>
> But in this case, there's nothing in the complaint that alleges that. I have no information before me because of that. And for that reason, I conclude that BAE Systems, Inc. is not a proper defendant before the court and I will grant its motion to dismiss for that reason among others.

The district court seems to have concluded that the amended complaint was insufficient as to BAE Systems, Inc. solely because there were no allegations of the sort of facts that would justify piercing the corporate veil (of the indirect subsidiary that was the party to the TSA contract). The court did not discuss what BAE Systems, Inc. itself notes is the amended complaint's allegation that BAE Systems, Inc. "induced the United States to infringe

the '844 patent by 'instructing the TSA regarding the use of [the CAT/BPSS] systems in a manner which infringes the '844 patent.'" Appellees' Br. 13–14 (alteration in original) (quoting amended complaint). In its narrow focus only on potential veil-piercing facts, the district court erred.

The district court's focus was appropriate for considering indirect (sometimes called derivative) liability for the wrongful acts (here, infringement of any variety) committed by another legal entity, specifically a subsidiary. But veil-piercing standards do not govern the separate issue of direct liability for one's own wrongful acts, as the governing law defines those wrongs. *See United States v. Bestfoods*, 524 U.S. 51, 64–65 (1998). Thus, without regard to veil piercing, BAE Systems, Inc. could be directly liable for its own wrongful acts of inducement, just as a corporation that is not an owner of the contracting subsidiary here could be. In either event, the issue is whether the defendant's own conduct meets the standards for inducement, including the requirements for inducing acts with the requisite intent. *See A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596–97 (Fed. Cir. 1988) (separately addressing indirect liability for subsidiary's infringement, based on veil-piercing standards, and direct liability for inducement by parent); *cf. Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313–16 (Fed. Cir. 2010) (discussing earlier cases concerning corporate officers and owners).

"To prove inducement of infringement, the patentee must 'show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement.'" *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015). Here, the district court's analysis did not include an examination of whether, veil piercing aside, BAE Systems, Inc., acting in its own capacity while respecting corporate forms and having the intent required for indi-

rect infringement, affirmatively encouraged the government to enter into a contract with the parent's wholly owned subsidiary to engage in infringement. Such acts are not facially irrational for a parent company that would indirectly benefit from sales made by its subsidiary. But the opinion of the district court includes no discussion of inducement standards and whether the 245 amended complaint's allegations about BAE Systems, Inc.'s own actions suffice to proceed beyond the complaint stage under those standards.

Accordingly, the district court's analysis of the ground for dismissal uniquely advanced by BAE Systems, Inc. was too narrow to support the dismissal. We see no reason to undertake our own independent analysis of whether the factual allegations of the amended complaint as a whole are "sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346, 347 (2014). Even if we were to deem the allegations insufficient, the remedy for insufficient specificity, in the ordinary course, would be a dismissal with leave to amend. *Id.* Given that we are affirming the dismissal on the basis of § 1498(a) in any event, we see no reason to pursue further whether Astornet's pleading here was legally sufficient.

C

NCR and MorphoTrust contend that the "two-dismissal rule" of Rule 41(a)(1)(B), which treats certain dismissals as adjudications on the merits, independently supports the dismissal of the cases against them—a ground not advanced by BAE Systems, Inc. We note first that it is hardly clear that the district court relied on Rule 41 in dismissing the case against MorphoTrust. In its sua sponte dismissal of MorphoTrust, the district court referred only to MorphoTrust's defense based on "the same contract documents," J.A. 71, which seems unconnected to Rule 41. Moreover, the asserted first suit, *i.e.*, Mr. Had-

dad's Maryland action, was not actually brought against MorphoTrust, but against the company that was its predecessor under the 2011 TSA contract at issue. We need not further examine the significance of those facts, however, because we reject the district court's Rule 41 conclusion for a reason independent of any differences between NCR and Morpho-Trust.[1]

Rule 41(a) provides:

(a) Voluntary Dismissal.
    (1) By the Plaintiff.
        (A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
           (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
           (ii) a stipulation of dismissal signed by all parties who have appeared.

---

[1] We address this question even though, in a new Astornet suit against the United States, preclusion might not result from the district court's Rule 41 ruling. "The Restatement and other authorities recognize that res judicata should not bar a claim when a court's remedial authority in the first action prevented the plaintiff from seeking the relief sought in the second action." *Cunningham v. United States*, 748 F.3d 1172, 1179 (Fed. Cir. 2014); *see* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4412, at 276 (2d ed. 2002). At oral argument, the government observed that it could not have been sued for patent infringement in the Maryland district court. Oral Arg. at 25:10–25:16. But the government also declined to waive any defenses that it might raise in a new § 1498 action. *Id.* at 24:27–24:40.

(B) Effect.  Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

NCR and MorphoTrust invoke the last sentence.  They argue that, when Astornet amended the complaint in the 245 action to leave only BAE Systems, Inc. (omitting NCR and MorphoTrust), the amendment constituted a voluntary dismissal under Rule 41(a) and was, moreover, the second such voluntary dismissal (of an action based on or including the same claim), the first one having been Mr. Haddad's dismissal of his earlier Maryland action.

The argument by NCR and MorphoTrust runs into a clear textual obstacle.  Rule 41(a)(1)(B) by its terms applies only if "the plaintiff" (in the action whose dismissal would become an adjudication on the merits) previously dismissed an action (based on or including the same claim).  The plaintiff in the second action must be the same person as the plaintiff in the first action at the time of the voluntary dismissal (NCR and MorphoTrust accept that the provision applies only to voluntary dismissals).  Here, however, the asserted first action was brought and dismissed by Mr. Haddad, and the asserted second action (the 245 action) was brought by Astornet.  Astornet, "the plaintiff" in the 245 action, did not previously dismiss Mr. Haddad's Maryland action—to which Astornet was not even a party.

NCR and MorphoTrust do not contend, or support a contention, that Mr. Haddad and Astornet actually are the same "plaintiff."  They are not: one is a natural person that allegedly owns the other, a corporation.  That fact is not altered by any invocation of "privity" between Mr. Haddad and Astornet, a concept that by definition involves distinct persons (and is invoked in various settings

to justify imposing certain legal consequences on one because of the relationship with the other). *See* Bryan Garner, *Black's Law Dictionary* 1394 (10th ed. 2009) ("[t]he connection or relationship between two parties . . ."). In the district court, NCR, in asserting privity, cited only one decision, and that decision did not involve Rule 41(a)(1)(B) and its "the plaintiff" language. *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157 (1st Cir. 2000). Moreover, perhaps not surprisingly in light of the separate-corporations defense presented by BAE Systems, Inc., NCR and MorphoTrust have not argued that the corporate veil of Astornet should be pierced or that the consequence of doing so would be to equate Mr. Haddad and Astornet so as to make them the same plaintiff.[2]

At least for that reason, the facially rigid Rule 41(a)(1)(B) is inapplicable by its plain terms. That conclusion is so straightforward that we rely on it even if, which we need not say, Astornet did not clearly articulate, among its somewhat imprecise arguments on a somewhat confusing topic, this particular ground for finding Rule 41(a)(1)(B) inapplicable. As a result, we need not explore the additional questions raised about whether Rule 41(a)(1)(B) applies here, including whether the dismissal

---

[2] Mr. Haddad said in his two complaints that he was "doing business as" Astornet, but NCR and MorphoTrust have not argued, or cited any authority establishing, that the demanding standards for veil piercing are automatically satisfied for that reason. *See EEOC v. Recession Proof USA LLC*, 2013 WL 6328000, at *8–9 & n.12 (D. Ariz. 2013), *adopted in relevant part*, 2013 WL 6327994 (D. Ariz. 2013) ("doing business as" allegation not enough for veil piercing); *Matter of Adventure Bound Sports, Inc.*, 837 F. Supp. 1244, 1256 (S.D. Ga. 1993) (relying on full veil-piercing analysis, not just the "doing business as" label).

of Mr. Haddad's Maryland action and the amendment of the complaint in the 245 action were voluntary dismissals within the meaning of the Rule.

The argument made by NCR and MorphoTrust for dismissal based on Rule 41 accordingly must depend on a departure from the Rule's language to expand its reach. But if such an expansion is ever permissible, we do not see a persuasive justification for bringing this case within the Rule's coverage. There was no abusive, harassing litigation to the prejudice of the defendants here. There were only non-prejudicial changes made to avoid potential pleading problems. And one crucial step in the process took place with the urging of one of the defendants.

No litigation on the merits had occurred before the eventual arrival at the three Astornet actions now at issue. As to Mr. Haddad's Maryland filing that was the subject of the alleged first voluntary dismissal, the district court described that case as "a comical pro se case where the person filed a notice of dismissal with prejudice and [the court] rescued him from the consequences of having done so." J.A. 62. As for the alleged second voluntary dismissal, NCR's counsel explained at oral argument that MorphoTrust's counsel had played a role in persuading Astornet to take the step that NCR and MorphoTrust now treat as the second dismissal, namely, the separation of the 245 action into three separate actions against the three distinct defendants, apparently because of the newly effective restrictions on joinder of defendants in patent cases, 35 U.S.C. § 299. Oral Arg. at 20:34–20:46.

In these circumstances, barring Astornet's actions against NCR and MorphoTrust by relying on an application of Rule 41(a)(1)(B) that goes beyond its terms would not comport with the overarching directive that the Civil Rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. We therefore reject

the district court's reliance on Rule 41(a)(1)(B) as a basis for dismissal.

## D

The brief for appellees makes several additional arguments to support the dismissal. Like the district court, we do not rule on those arguments.

## E

Astornet has not argued for a transfer of this case to the Court of Federal Claims under 28 U.S.C. § 1631 if, as we and the district court have both concluded, § 1498 bars Astornet's present actions against the defendants. Such an argument, if made, would face a serious problem. § 1631 applies only if "there is a want of jurisdiction" in the transferor court. *See, e.g.*, *Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374–78 (Fed. Cir. 2007) (§ 1631 inapplicable where no jurisdictional bar to case in transferor court). But we have held that § 1498's bar does not deprive the district court of jurisdiction. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379 (Fed. Cir. 2002). In a nonprecedential decision, we have rejected § 1631's applicability in similar circumstances. *Connell v. KLN Steel Prods. Co.*, 255 F. App'x 519, 522 (Fed. Cir. 2007). With no argument for transfer from Astornet, however, we do not consider transfer as an alternative to dismissal and so do not definitively address § 1631's applicability.

## CONCLUSION

The dismissal of Astornet's case based on § 1498 is affirmed.

## **AFFIRMED**